**Richard W. NORTON,**
**Petitioner–Appellee,**

v.

**Al C. PARKE, Respondent–Appellant.**

**No. 88–6361.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1989.

Decided Dec. 22, 1989.

Culver V. Halliday (argued), Greenebaum, Boone, Treitz, Maggiolo, Reisz &

Brown, Louisville, Ky., for petitioner-appellee.

Frederic J. Cowan, Atty. Gen., William B. Pettus, Asst. Atty. Gen. (argued), Frankfort, Ky., for respondent-appellant.

Before KEITH, MILBURN and NORRIS, Circuit Judges.

KEITH, Circuit Judge.

Appellant Al C. Parke ("Parke") appeals from a district court order granting appellee Richard W. Norton's ("Norton") petition for a writ of habeas corpus. For the reasons set forth below, we REVERSE.

## I.

Parke serves as the warden of the Kentucky State Reformatory ("the Kentucky Reformatory") in La Grange, Kentucky. Norton is a prisoner in the Kentucky Reformatory. In November 1981, Norton was sentenced by the Kenton Circuit Court, Kentucky, to serve a ten year term on the charges of armed robbery and abduction. In March 1984, Norton was sentenced by the Campbell Circuit Court, Kentucky, to serve two additional years on the charge of second degree escape. Although Norton is currently eligible for parole in Kentucky, he refuses to sign his parole certificate which would effectively return him to Ohio for trial on a previous indictment.

Norton and his co-defendant, Henry Wiley ("Wiley"), were indicted in Ohio on September 22, 1981. Both Norton and Wiley were charged with aggravated burglary and complicity to aggravated burglary. On the basis of a complaint and warrant for the arrest of Norton, Hamilton County, Ohio officials lodged a detainer[1] with Kentucky Reformatory officials, who acknowledged receipt of the detainer on November 10, 1981.

On January 15, 1983, Norton filed a motion to dismiss the Ohio indictment for failure to prosecute, arguing that his sixth amendment right to a speedy trial had been violated. The Court of Common Pleas for Hamilton County, Ohio overruled Norton's motion on February 3, 1983. The court determined: first, that both Ohio and Kentucky are members of the Interstate Agreement on Detainers ("IAD")[2]; second, that Article III(a) of the IAD[3] requires that a prisoner be tried on outstanding criminal charges within 180 days of his request; third, that Article V(c) of the IAD[4] requires dismissal of the indictment

1. A detainer is a "request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when the release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985).

2. The IAD is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction. *See Carchman*, 473 U.S. at 719, 105 S.Ct. at 3403. Forty-eight states (all but Louisiana and Mississippi), the District of Columbia, Puerto Rico, the Virgin Islands and the United States are all signatories of the IAD. *See id.* In Ohio and Kentucky, it is codified at Ohio Rev.Code § 2963.30 and Ky. Rev.Stat. § 440.450, respectively.

3. Article III(a) of the IAD provides, in pertinent part, that:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint....

Ohio Rev.Code § 2963.30.

4. Article V(c) of the IAD provides that:

If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

Ohio Rev.Code § 2963.30.

with prejudice if the prisoner is not tried within the requisite time period; and fourth, that Norton had failed to avail himself of these IAD provisions. The court explained that if Norton filed the appropriate forms to invoke the IAD and if the prosecutor failed to commence timely proceedings, then the court would entertain a motion to dismiss the prosecutor's complaint. Norton's appeal from this ruling of the trial court was dismissed on March 15, 1983.

Norton filed a second motion with the Court of Common Pleas on March 15, 1983, demanding that Ohio either proceed to trial or withdraw the complaint against him. In the "Memorandum of Authorities" accompanying his motion, Norton expressly referenced the provision of Article III of the IAD, as incorporated under the Ky.Rev. Stat. § 440.450. Because Norton failed to specifically invoke the IAD with the prescribed forms, the court overruled his motion on March 22, 1983.

Presenting the same issues that he had raised in the Ohio courts, Norton filed a petition for writ of habeas corpus in Lyon Circuit Court, Kentucky, on April 6, 1983. Norton's petition was dismissed by the Lyon Circuit Court on May 6, 1983; the Court of Appeals of Kentucky on June 28, 1983; and the Supreme Court of Kentucky on June 20, 1983.

On January 17, 1984, Norton filed another motion to dismiss the indictment against him with the Court of Common Pleas in Hamilton County, Ohio. On January 30, 1984, Norton filed, with the Court of Appeals of Ohio, a petition for writ of mandamus ordering the trial court to dismiss the indictment against him for failure to pro-

vide a speedy trial. Norton's petition for writ of mandamus was dismissed on March 5, 1984.

Norton then sought relief in the United States District Court for the Western District of Kentucky. On April 20, 1987, his petition for writ of habeas corpus was denied for failure to exhaust available state remedies. At the instruction of the district court, Norton returned to the Kentucky courts and, on April 30, 1987, filed a petition for writ of habeas corpus. In his petition, Norton challenged an extradition warrant that had been issued by the Governor of Kentucky, Martha Layne Collins ("Governor Collins"), pursuant to the Uniform Criminal Extradition Act, Ky.Rev. Stat. § 440.150 *et seq.* Norton's petition was dismissed by the Lyon Circuit Court on June 10, 1987; the Kentucky Court of Appeals on August 7, 1987; and the Supreme Court of Kentucky on September 15, 1987.

On December 3, 1987, Governor Collins issued an executive order to recall the Kentucky extradition warrant for Richard Norton. Norton then filed another petition for writ of habeas corpus, which was denied by the Oldham Circuit Court on January 13, 1988, and the Kentucky Court of Appeals on March 14, 1988.

On October 6, 1987, Norton and his co-defendant, Wiley, brought the present action in the United States District Court for the Western District of Kentucky. Norton and Wiley filed a joint petition for writ of habeas corpus, pursuant to 28 U.S.C. §§ 2241 [5] and 2254. In its October 14, 1987 order, the district court dismissed Wiley from the present action and ordered him to file a separate petition.[6] The district court ap-

---

**5.** Although Norton actually brought his petition under both 28 U.S.C. §§ 2241 and 2254, the present action is a pre-trial petition for a writ of habeas corpus and is properly brought under 28 U.S.C. § 2241. *See Atkins v. People of State of Michigan,* 644 F.2d 543, 546 & n. 1 (6th Cir.), *cert. denied,* 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981).

**6.** Wiley subsequently filed a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in his own name. Wiley's challenges to his individual Ohio indictment and Kentucky detainer were rejected by the district court, as well as this court. In

*Wiley v. Parke,* No. 88–5337, 869 F.2d 1494 (6th Cir.1989) (unpublished per curiam), we explained that:

[Wiley] may raise his speedy trial claim in the Ohio courts by invocation of the IAD and as a defense in any eventual trial on the charges. Therefore, he may not attempt, in a pre-conviction habeas action, to prevent his prosecution under the charges. *See Atkins v. People of the State of Michigan,* 644 F.2d 543, 547 (6th Cir.), *cert. denied,* 452 U.S. 964 [101 S.Ct. 3115, 69 L.Ed.2d 975] (1981); *Gully v. Kunzman,* 592 F.2d 283, 286 (6th Cir.), *cert. denied,* 442 U.S. 924 [99 S.Ct. 2850, 61 L.Ed.2d 292]

pointed counsel for Norton on March 22, 1988. To ensure that the State of Ohio would be adequately represented as the jurisdiction charging Norton, the district court invited the Ohio Attorney General to intervene as a party or as amicus. The Ohio Attorney General did not intervene, but filed an amicus brief on August 10, 1988.

After carefully considering Norton's claims, the district court found that there had been a trial delay of seven years from the date of the original Ohio indictment against Norton. The district court also determined that, for five years, Ohio had been notified of Norton's demand for trial. Even though it was argued that the trial delay was due to Norton's failure to formally comply with the IAD, the district court held that the proffered justification for the denial of Norton's sixth amendment rights was unacceptable. On November 18, 1988, the district court granted Norton's writ of habeas corpus, ordered that the Ohio indictment and the Kentucky detainer against Norton be quashed, and released Norton from all custody attributable to the indictment or detainer.

Parke filed a timely appeal with this court on December 2, 1988.

## II.

### A.

■ On appeal, Parke argues that because Norton did not formally invoke the IAD, he has failed to exhaust available state remedies, and thus is not entitled to federal habeas relief. Norton agrees that a " 'state convicted prisoner must first exhaust his available and adequate state remedies as a condition precedent to federal habeas relief.' " Brief of Petitioner–Appellee at 5 (quoting *Wiley v. Sowders,* 647 F.2d 642, 646 (6th Cir.), *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981)). Norton contends, however, that

invocation of the IAD is not required to exhaust available state remedies. We disagree.

In *Bonnell v. Commonwealth of Kentucky,* No. 86–6143, 816 F.2d 678 (6th Cir. 1987) (unpublished per curiam),[7] petitioner, a Kentucky state prisoner, filed a writ of habeas corpus, arguing that an Indiana detainer had been improperly lodged against him. Because he failed to invoke the IAD, we concluded that the district court correctly held that petitioner failed to exhaust his state remedies, and thus, was not entitled to federal habeas relief. *See id.* Similarly, other circuits have concluded that a prisoner challenging a detainer must invoke the IAD before filing a petition for writ of habeas corpus. The Third Circuit held, in *Grant v. Hogan,* 505 F.2d 1220 (3d Cir. 1974), that petitioner, a federal prisoner, was required to exhaust all remedies afforded to him by the IAD before seeking federal court relief from an extradition action. *See id.* at 1223–24. Moreover, in *Slaughter v. Henderson,* 470 F.2d 743 (5th Cir.1972), the Fifth Circuit considered the challenge of petitioner, a federal prisoner, to a detainer lodged against him by the State of Ohio. Because both the United States and the State of Ohio are parties to the IAD, the court held that petitioner was required, before seeking federal habeas relief, to attempt to have the Ohio detainer removed from his prison records through the administrative procedures of the IAD. *See id.* at 744.

The IAD is a simple procedure which permits the speedy disposition of any untried indictment and the dismissal of any untried charges, where the prosecuting state has not made a timely response to the prisoner's request for trial. *See Grant,* 505 F.2d at 1224. Moreover, the IAD has proven to be an effective remedy for prisoners challenging unlawful extradition actions. *See id.* By paying due deference to the IAD, as a congressionally sanctioned

(1979). Nor may he force the state to go to trial by way of this action, when remedies under the IAD remain available. *Atkins,* 644 F.2d at 546.

*Wiley,* 869 F.2d 1494.

7. We recognize that the citation of unpublished per curiams is disfavored. We cite *Bonnell,* however, because it establishes the law governing the present action and "there is no [Sixth Circuit] published opinion that would serve as well." *See* 6th Cir.R. 24(b).

interstate compact, and by requiring prisoners to resort to the IAD before federal habeas relief, the federal courts strike a reasonable balance between limiting judicial intervention and protecting prisoners' rights.

Therefore, we have concluded that it is in the interest of sound judicial administration, and consistent with established principles, to require that Norton and other prisoners challenging extradition actions pursue the remedies provided by the IAD before seeking habeas relief in federal court.[8]

### B.

■ Responding to Parke's argument that Norton did not formally invoke the IAD, Norton contends that his numerous requests for a speedy trial should be deemed sufficient to establish substantial compliance. Norton argues that his "Memorandum of Authorities," filed with the Ohio prosecutor and the Ohio Court of Common Pleas on March 15, 1983, discussed Article III of the IAD and demanded that the State of Ohio initiate action against him within 180 days. Parke responds that the filing of pleadings with the Ohio state courts is insufficient to invoke the provisions of the IAD; to exhaust available state remedies; and therefore, to justify federal habeas relief. We agree.

After a detainer had been lodged against a prisoner, the warden is required, by Article III(c) of the IAD, to inform the prisoner of his right to request a final disposition of charges against him. The prisoner may use IAD Form 1 for this purpose. *See* Ohio Rev.Code § 2963.30. *See also Casper v. Ryan*, 822 F.2d 1283, 1285 (3d Cir.1987), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988). Article III(a) grants the prisoner the right to request a final disposition of untried charges pending against him. The prisoner may utilize IAD Form 2, the "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints." *See Casper*, 822 F.2d at 1285. Article III(a) also requires that the request of the prisoner for final disposition "shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner." Ohio Rev.Code § 2963.30.

After determining that a prisoner's ambiguous and informal letter to state officials failed to substantially comply with the requirements of Article III of the IAD, the Third Circuit explained:

> In the portion of our opinion in *Nash v. Jeffes*, 739 F.2d 878 (3rd Cir.1984) *rev'd sub nom., Carchman v. Nash*, 473 U.S. 716 [105 S.Ct. 3401, 87 L.Ed.2d 516] (1985), that was not the subject of the Supreme Court's reversal, ... we noted that "courts have generally required that prisoners must strictly comply with IAD procedures before they will dismiss charges on the basis of a violation of [the 180–day provision of] Article III." *Nash*, 739 F.2d at 884; *see also Williams v. Maryland*, 445 F.Supp. 1216, 1220 (D.Md.1978) (letter to state district court requesting trial on state charge did not satisfy the requirements of Article III); *Gray v. Benson*, 443 F.Supp. 1284, 1286 (D.Kan.1978) (letter to U.S. Attorney requesting disposition of detainer which did not include the necessary certificate and was not delivered to the appropriate court was not sufficient to trigger Article III).

*Casper*, 822 F.2d at 1292.

Requiring prisoners to strictly comply with the provisions of the IAD produces

---

8. In the alternative, Norton argues that the Ohio courts have previously refused to address his constitutional claims and that further resort to the Ohio courts would be futile. We find Norton's argument unpersuasive. On February 3, 1983, the Court of Common Pleas for Hamilton County, Ohio overruled Norton's "Motion to Dismiss for Failure to Prosecute," but explained that if Norton were to invoke the IAD, and if the Ohio prosecutor were to fail to act within 90 days, then the court would entertain a motion to dismiss the Ohio complaint against Norton. Thus, we are confident that if Norton invokes the IAD, he will enjoy a harvest—albeit one of potentially bitter fruit.

substantial benefits. First, if a prisoner uses standard IAD Form 2, and includes the certificate required by Article III(a), then the prosecuting authority will be notified that the IAD has been invoked and will be better able to avoid the severe sanction of dismissal mandated by Article V(c). *See Casper,* 822 F.2d at 1392. Second, because prosecutors are not currently compelled to sort through every prisoner's correspondence and pleadings to find IAD references, the IAD remains an effective system to rapidly adjudicate the claims of prisoners challenging extradition. *See Nash,* 739 F.2d at 884. Third, requiring strict compliance with the IAD provides the prosecutor with information and the ability to decide whether or not to prosecute in the requesting state. If the prisoner is currently serving a lengthy sentence on a serious charge, then the requesting state might opt not to spend limited resources on a second trial unlikely to produce additional benefits. *See Beebe v. Vaughn,* 430 F.Supp. 1220, 1223 n. 6 (D.Del.1977).

Although judicial efficiency is served by the rule that a prisoner must strictly comply with IAD procedures before any untimely or unlawful actions brought against him may be dismissed, our sense of fairness [9] persuades us to posit an exception to the general rule. When the prisoner has done everything possible to comply with the IAD, and it is the custodial state that is responsible for the prisoner's default, then strict compliance with the IAD may not be required. *See Casper,* 822 F.2d at 1393. *See also Schofs v. Warden, FCI, Lexington,* 509 F.Supp. 78, 82 (E.D.Ky.1981) (where federal prisoner was denied the necessary IAD forms through no fault of his own, the court held that prisoner's letter to the court clerk and the state's attorney was sufficient to invoke the IAD).

In the present case, the district court determined that Norton did not use the required IAD forms to give notice to the Ohio authorities of his demand for trial. The court also found that Norton failed to comply with the formalities of the IAD by giving notice of his demand for trial to Parke, the warden of the Kentucky Reformatory. In general, Norton's pleadings in the Ohio Court of Common Pleas did not conform to Article III of the IAD. Specifically, Norton failed to provide the Ohio officials with a certificate of custodial authority or information regarding his prison conduct and eligibility for parole. *See* Ohio Rev.Code § 2963.30.

It is evident that Norton did not formally comply with IAD procedures. In addition, we are without justification to excuse Norton's non-compliance or to find that his deficient pleadings substantially complied with the IAD. First, Norton does not argue that he requested and was denied the IAD forms necessary to initiate a request for a final disposition of the Ohio complaint against him. Second, because Norton was instructed by the Ohio Court of Common Pleas to initiate an action under the IAD before seeking federal habeas relief, Norton cannot claim that he was ignorant of the appropriate procedures. *See supra* note 8. Third, Norton's pleadings in the Ohio Court of Common Pleas cannot be construed as a minimally adequate substitute for the appropriate forms. Fourth, Norton's pleadings contained little of the information that Article III of the IAD requires to be sent to the requesting state before the 180–day clock begins to run. Thus, because Norton's pleadings were not offered in compliance with Article III(c) of the IAD, the State of Ohio did not violate that provision's 180–day requirement.

### C.

In summary, we have determined that Norton did not formally invoke the IAD,

---

**9.** We have often demonstrated leniency in our review of actions brought by prisoners. For example, in *Patterson v. Mintzes,* 717 F.2d 284 (6th Cir.1983), petitioner, a state prisoner, filed a *pro se* § 1983 action against various corrections officers. Although petitioner failed to file written objections to the magistrate's report within the ten-day time limit, we held that peti-

tioner retained his right to appeal from the judgment of the district court. *See id.* at 288. *See also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (explaining that prisoners' *pro se* complaints should be held to "less stringent standards than formal pleadings drafted by lawyers").

and that Norton has failed to exhaust his adequate and available state remedies. Thus, we hold that the district court erred: first, by granting Norton's petition for writ of habeas corpus; and second, by quashing the Ohio indictment and the Kentucky detainer.

For the foregoing reasons, we REVERSE the order of the district court.