**Bruce Malcolm CHEEK, Petitioner,**

v.

**John LAMANNA, et al., Respondent.**

**No. 4:00 CV 163.**

United States District Court,
N.D. Ohio,
Eastern Division.

May 19, 2000.

Bruce Malcolm Cheek, Elkton, OH, pro se.

Lisa Hammond Johnson, Office of the U.S. Attorney, Cleveland, OH, for respondents.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon Petitioner Bruce Malcolm Cheek's *pro se* motion pursuant to 28 U.S.C. § 2241, filed on January 20, 2000 (Dkt.# 1). Also before the Court are Respondents' Answer (Dkt.# 4) and Petitioner's Brief in Response (Dkt.# 5). Petitioner alleges that officials from the District Attorney's Office and the Superior Court of Gilmer County, Georgia violated his Sixth Amendment right to a speedy trial in connection with pending state criminal charges. Petitioner also claims that the Georgia state warrants have adversely effected the execution of his federal sentence.

Petitioner has failed to exhaust his state remedies under the Interstate Agreement on Detainers Act ("IAD" or "agreement"), 18 U.S.C.App. 2, § 2, and therefore the petition for writ of habeas corpus is denied.

### I. Facts & Procedural History

On March 2, 1995, Petitioner was convicted of bank fraud in violation of 18 U.S.C. § 1344. He is currently serving a 108–month federal sentence at the Federal Correctional Institution in Elkton, Ohio ("FCI Elkton") and has a projected release date of February 3, 2002. In 1994, Petitioner was also charged with seven counts of theft by conversion and theft by deception by the State of Georgia. In connection with these charges, the Superior Court of Gilmer County, Georgia issued warrants for the Defendant's arrest on April 14, 1994. Petitioner was not brought to trial on the state charges.

During Petitioner's incarceration, the Federal Bureau of Prisons ("BOP") made three written attempts to determine the status of Petitioner's pending state charges and to provide the Gilmore County Sheriff's Office with information on how to place a detainer on Petitioner. The three requests, entitled Detainer Action

Letters, were sent by the BOP Systems Manager to the Sheriff's Office on May 17, 1995, October 10, 1995 and July 17, 1996.[1] Petitioner also made two requests in 1995 and 1996 to the Gilmer County District Attorney for information on the status of his state charges. Specifically, the letters stated that he would like to satisfy all his financial obligations in exchange for a plea agreement. Although Petitioner now refers to these letters as demands for a speedy trial, the letters do not mention the IAD or Petitioner's interest in his right to a speedy trial. However, the letters do express urgency in Petitioner's desire to pay his financial obligations and avoid going to trial.

On September 20, 1999, Petitioner filed a motion to dismiss the Georgia indictment for failure to prosecute, arguing that the Gilmer County District Attorney violated his constitutional right to a speedy trial and the IAD. One month later, Petitioner filed a second motion with the Gilmer County Superior Court, requesting that the court immediately consider his motion to dismiss. Petitioner claims that through his letters to the District Attorney, the BOP Detainer Action Letters, and the two motions filed in Gilmer County Superior Court, he exhausted his state remedies so that he may properly present his Sixth Amendment claim to this Court in the present action.

## II. The Interstate Agreement on Detainers

The State of Georgia and the United States are both parties to the IAD. O.C.G.A. § 42–6–20; 18 U.S.C.App. 2, § 2. Article III of the agreement gives a prisoner the right to demand a final disposition of charges pending against him.[2] To assert this right, the prisoner must first file a request for final disposition with the warden. The warden then forwards the request to both the appropriate state court and prosecutor. The request must also include a certificate stating the prisoner's term of commitment, the time served and remaining on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision made in connection with the prisoner's pa-

1. Each Detainer Action Letter made the following Request in connection with Petitioner:

    The Below checked paragraph relates to the above named inmate:
    Would you please investigate this report and advise what disposition, if any, has been made of the case. If subject is wanted by your department and you wish a detainer placed, it will be necessary for you to forward a certified copy of your warrant to us along with a cover letter stating your desire to have it lodged as a detainer, or indicate you have no further interest in subject.
    (Dkt. # 1, exhibits 4–6).

2. The relevant portions of Article III of the IAD are as follows:

    (a) [H]e shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint.... The request of the prisoner shall be accompanied by a certificate of the

    appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.
    (b) The written notice and request for final disposition referred to in paragraph
    (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.
    (d) If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.
    18 U.S.C.App. 2, § 2, Article III.

role. Finally, the prisoner is entitled to dismissal of the charges with prejudice if he is not tried within the requisite 180–day time period. The 180 days commence once "the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer." *Fex v. Michigan,* 507 U.S. 43, 52, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993).

The Sixth Circuit requires strict compliance with the provisions of the IAD before a prisoner may petition a federal court for relief. *Norton v. Parke,* 892 F.2d 476, 481 (6th Cir.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1533, 108 L.Ed.2d 772 (1990). But, if the custodian of the inmate is responsible for the prisoner's default, or if the prisoner could not otherwise comply with the agreement by no fault of his own, then strict compliance may not be required. *Id.*

### III. Statement of Jurisdiction

The Court has jurisdiction to hear Petitioner's pretrial claim under 28 U.S.C. § 2241. An inmate who is in custody may properly file a speedy trial claim such as this, "regardless of whether final judgement has been rendered and regardless of the present status of the case pending against him." *Atkins v. People of State of Michigan,* 644 F.2d 543, 546 n. 1 (6th Cir.), *cert. denied,* 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981); *See also Nelson v. George,* 399 U.S. 224, 230, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970).

### IV. Exhaustion of State Remedies

Before applying for habeas relief under 28 U.S.C. § 2241, an inmate must exhaust any adequate and available state court remedies. 892 F.2d at 480. In a speedy trial claim, exhaustion is satisfied "when the petitioner has availed himself fully of the state machinery in attempting to have the state commence trial on the charges pending against him." 644 F.2d at 547. Addressing this issue, the Sixth Circuit explained:

A body of case law has developed holding that although § 2241 establishes jurisdiction in the federal courts to consider pretrial habeas corpus petitions, the courts should abstain from the exercise of that jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state courts or by other state procedures available to the petitioner (citations omitted).... [T]he doctrine of exhaustion of state remedies has developed to protect the state courts' opportunity to confront initially and resolve constitutional issues arising within their jurisdictions and to limit federal judicial interference in state adjudicatory processes. This argument is especially forceful in a situation involving a speedy trial claim, because the drastic nature of the relief usually granted, dismissal of the case, *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) could not be more disruptive of pending state actions.

644 F.2d at 546. Therefore, if adequate remedies are still available through the IAD, Petitioner may not force the state to go to trial by way of a habeas corpus action. 892 F.2d at 478 n. 6. However, if Petitioner properly invoked the IAD and the Georgia prosecutor failed to commence timely proceedings, then the Court will entertain Petitioner's claim. *Id.* at 477–78.

### V. Discussion

Petitioner claims that he exhausted his state remedies by making numerous requests for a speedy trial, which should be deemed sufficient to establish compliance with the IAD. However, Petitioner's letters to the Gilmer County District Attorney, the BOP Detainer Action Letters and Petitioner's two motions are insufficient communications to invoke the provisions of the IAD.

It is clear that Petitioner followed none of the IAD formal procedures, as required in the Sixth Circuit. *See* 892 F.2d at 481. Petitioner made no speedy trial request to the warden and the appropriate informa-

tion was never forwarded to the state court and prosecutor. Because the court and prosecutor were not put on notice of Petitioner's IAD demand, the 180–day limitation period for Georgia to bring Petitioner to trial did not begin. Furthermore, Petitioner may not be excused from the IAD strict compliance requirement. Petitioner does not claim that compliance with IAD procedure was impossible or in any way inhibited by prison officials, nor is he ignorant of the IAD provisions, as the relevant passages from the agreement are cited and quoted throughout his pleadings and exhibits.

Petitioner's argument that he substantially complied with the IAD is also flawed because neither the Gilmer County court or prosecutor received adequate notice of Petitioner's request for a speedy trial. Petitioner filed this claim only 120 days after the Gilmer County Superior Court was informed of Petitioner's request for a trial through his September 20, 1999 motion to dismiss. Thus, Petitioner's habeas claim was premature, as the Supreme Court has clearly stated that the 180–day period to bring a prisoner to trial does not begin until both the court and prosecutor have notice of the demand. 507 U.S. at 52, 113 S.Ct. 1085.

Finally, Petitioner's letters to the District Attorney's Office in Gilmer County can not be interpreted as requests under the IAD. The letters did not mention Petitioner's interest in going to trial, his rights under the IAD, nor did they provide Georgia officials with a certificate of custodial authority or adequate information regarding his prison conduct, sentence and eligibility for parole. Without this information, it is understandable how the District Attorney reasonably did not read the letter as a demand for trial. If this type of communication was sufficient to rise to an IAD demand, then prosecutors would be required to closely examine every document submitted by prisoners for possible IAD references in order to avoid dismissal under Article III of the agreement. *See*

892 F.2d at 481. Therefore, Petitioner's claim fails even under a very relaxed standard.

## VI. Conclusion

Because Petitioner failed to invoke the IAD, the Court holds that Petitioner did not exhaust his adequate and available state remedies, and thus he is not entitled to federal habeas relief. The Court hereby **DENIES** the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241. Accordingly, this action is **DISMISSED.**

IT IS SO ORDERED.