**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0434n.06
Filed: June 23, 2006

**No. 05-3535**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL FROM THE** |
| *Plaintiff-Appellee*, | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE SOUTHERN** |
| v. | ) | **DISTRICT OF OHIO** |
| | ) | |
| CARL WHITE, | ) | **OPINION** |
| | ) | |
| *Defendant-Appellant*. | ) | |

**BEFORE: KEITH and COLE, Circuit Judges; MILLS, District Judge.**[*]

**RICHARD MILLS, District Judge.**

Following the district court's denial of his motion to dismiss the indictment pursuant to the Interstate Agreement on Detainers Act (the "IADA"), 18 U.S.C. App. § 2, Defendant-Appellant Carl White pled guilty to the one-count indictment charging him with illegal possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). The district court sentenced White to serve a term of 51 months

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

imprisonment and three years of supervised release. The court also imposed a fine of $5,000. White appeals the district court's denial of the motion to dismiss the indictment and its imposition of the fine. We **AFFIRM**.

## I. BACKGROUND

On July 23, 2003, Carl White was charged in a complaint with being a felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), after a Phoenix Arms, .25 caliber Raven model semi-automatic pistol was found in his car on May 25, 2003, following a car and foot chase by Cincinnati police officers. The officers were serving a warrant, which was issued when White failed to appear for sentencing on a cocaine possession charge. The Hamilton County Ohio Court of Common Pleas sentenced White to sixteen months imprisonment on the drug conviction. White began serving that sentence at the Chillicothe Correctional Institution ("CCI") on July 24, 2003.

While in custody at CCI, White was notified on or about February 22, 2004 of the pending federal felon-in-possession charge stemming from his arrest on May 25, 2003. At some point, White began making efforts to request a speedy trial on the federal detainer lodged against him in the complaint. On February 22, 2004, a records officer at CCI wrote on the detainer that White could not "file a fast and speedy on U.S. Marshal [sic] charges." Neither the U.S. Marshal's Service, the U.S. Attorney's Office, nor the district court received notice of White's efforts to request a speedy trial

2

under the IADA on the federal charge. White did write a letter dated February 23, 2004 to the Clerk of Court, wherein he asked about procedures to "defend against these illegal, unfounded and unsupported accusations/charges." The Government notes that it did not receive this letter until it was attached to later filings. The letter was not filed or made part of the court's docket.

On April 19, 2004, White filed a *pro se* motion to quash the arrest warrant. White's motion raised six grounds, none of which requested a trial on the federal charge or made reference to his CCI speedy trial request. On May 5, 2004, the federal grand jury returned an indictment charging White with illegal possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).

On June 16, 2004, the district court entered an order denying White's motion to quash the arrest warrant. At this time, the court raised *sua sponte* the question of the applicability of the IADA. The court ordered the Government to address whether the IADA applied to White's case. Both the Government and White, *pro se*, filed briefs addressing this issue. The Government filed its response on June 29, 2004. White mailed a reply brief to the court on July 14, 2004, which was filed on August 9, 2004. The Government claims it was not until July 14, 2004 that White finally submitted to the court a copy of the trial request from CCI with his brief. This was the first notice received by either the district court or the Government of White's

3

request to the state prison.

On September 10, 2004, White had his initial appearance on the charge in the indictment and was appointed counsel. On November 10, 2004, counsel for White moved to dismiss the indictment based on the claim that the IADA's 180-day speedy trial clock had expired. White argued that the IADA's 180-day clock had expired on August 22, 2004, based upon his contention that he executed the speedy trial request form on February 22, 2004. On December 1, 2004, a hearing was held on the motion to dismiss. The district court orally denied White's motion at the hearing and subsequently issued an amended written order on December 16, 2004. The district court concluded that White did not initiate the protections of the IADA until July 14, 2004. Accordingly, the Government had until January 14, 2005 to bring White to trial without violating the 180-day window of the IADA.

On December 17, 2004, pursuant to the terms of a written plea agreement, White pled guilty to the indictment. He was sentenced on April 8, 2005 to serve 51 months in the custody of the Bureau of Prisons and three years of supervised release. A fine of $5,000 was imposed. A timely notice of appeal was filed on April 18, 2005.

## II. DISCUSSION

A. White's motion to dismiss the Indictment

This Court generally reviews for abuse of discretion a district court's denial of

4

a motion to dismiss an indictment. *See United States v. Middleton*, 246 F.3d 825, 841 (6th Cir. 2001). It does not appear that any cases from this Circuit have specifically addressed the standard of review on a motion to dismiss based on the IADA's speedy clock provision. The Second Circuit has held that a district court's legal conclusions under the IADA are subject to *de novo* review. *See United States v. Paredes-Batista*, 140 F.3d 367, 374 (2d Cir. 1998). The First Circuit has determined that the same standard of review applies to a district court's decision to dismiss an indictment under the IADA as is employed in analogous cases under the Speedy Trial Act: the district court's legal conclusions are reviewed *de novo*, its factual findings are reviewed for clear error, and its ultimate ruling is reviewed for abuse of discretion. *See United States v. Kelley*, 402 F.3d 39, 41 (1st Cir. 2005).

Article III(a) of the IADA provides in pertinent part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint. . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time

5

> remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

18 U.S.C. App. § 2, Art. III(a). If these conditions are complied with and the defendant is not brought to trial within 180 days as provided in the IADA, Article V(c) requires that the indictment against that defendant be dismissed. *See* 18 U.S.C. App. § 2, Art. V(c).

White contends that he triggered IADA's protection on or before February 22, 2004, when his speedy trial demand was sent to the officials at CCI. Because the Government did not bring him to trial within 180 days of that date (by August 22, 2004), therefore, the indictment must be dismissed. White claims that the IADA apparently does not specifically govern a situation in which a defendant makes a proper request in the custodial State, but the request is not made known to the receiving State. He asserts that the apparent fault of the custodial State to follow proper IADA procedures should not prejudice a defendant who does everything in his control to initiate proper proceedings. White notes that this Court has held, "When the prisoner has done everything possible to comply with the IAD, and it is the custodial state that is responsible for the prisoner's default, then strict compliance with the IAD may not be required." *See Norton v. Parke*, 892 F.2d 476, 481 (6th Cir. 1989).

6

White claims the district court recognized that he contacted that court through his request for information to file a speedy trial request, and that the custodial State, CCI, failed to comply with its obligations pursuant to the IADA. He notes, however, that the district court cited *Fex v. Michigan*, 507 U.S. 43, 51 (1993), and *Paredes-Batista*, 140 F.3d 367, for the proposition that the 180-day clock does not begin to run until both the district court and the prosecutor have received the prisoner's request for a speedy trial. White asserts this Court and other courts have determined that substantial compliance may be sufficient in some circumstances. *See Norton*, 892 F.2d at 481; *see also United States v. Dent*, 149 F.3d 180, 186-87 (3d. Cir. 1998) (observing that although strict compliance with Article III's requirements has typically been required, it has recognized that such compliance may not be required if the prisoner has complied to the extent possible, and the state is responsible for the default.). White further notes that in *Gibson v. Klevenhagen*, 777 F.2d 1056, 1058 (5th Cir. 1985), the Fifth Circuit concluded that by writing a letter to the prosecutor in which he asked for a final disposition of his case and seeking relief pursuant to the IADA from the department of corrections, the defendant had substantially complied with the IADA.

White contends that by signing a request for a speedy trial at CCI and by writing the clerk's office to inquire about initiating proper speedy trial procedures, he

7

substantially complied with the IADA.  Accordingly, White requests that this Court reverse the district court and that the indictment be dismissed on remand.

The Government notes that the United States Supreme Court has made clear that the IADA's 180-day speedy trial clock does not begin to run until both the prosecuting attorney's office and the court in the charging jurisdiction actually receive the speedy trial request from the institution where the individual is being held.  *See Fex*, 507 U.S. at 52.  This is consistent with the text of the statute.  *See id.*  The Government states that it is undisputed that neither its office nor the district court received White's CCI speedy trial request made on February 22, 2004 until July 14, 2004, when the request was attached to a pleading.  The Government claims that the state institution's failure to forward White's request does not alter the IADA's requirements or the application of *Fex*'s holding.  It further notes that the Second Circuit has held that even if the fault rested with the Marshal's Service, the 180-day clock does not begin to run until both the district court and the United States Attorney's Office receive the prisoner's speedy trial request.  *See Paredes-Batista*, 140 F.3d at 374 ("Even if we were to accept *arguendo* that delivery of the request to the U.S. Marshals' office . . . was sufficient under a theory of agency to constitute delivery to the 'prosecuting officer' . . . as Batista urges, that request did not become effective and start the 180-day clock until it was *also* delivered to the district court.").

The Government notes that White makes policy arguments pursuant to *United States v. Mauro*, 436 U.S. 340, 350 (1978), based on the Supreme Court's language that efforts should be made "to accomplish the disposition of detainers as promptly as possible," and "principles of interstate comity in the settlement of detainers" should be observed. The Government contends, however, that the Supreme Court's subsequent decision in *Fex*, 507 U.S. at 52, is the controlling authority that the 180-day IADA clock starts when the speedy trial request is delivered to the prosecutor and the district court. Moreover, the Government alleges that this result is supported by the plain language of the IADA. *See* 18 U.S.C. App. § 2, Art. III(a). The Government asserts that the dismissal of an indictment when the prosecutor had no notice of a speedy trial request and therefore could not comply would be inconsistent with IADA's spirit of cooperation between prosecuting authorities.

The Government further claims that the district court properly concluded that after CCI failed to deliver White's February 22, 2004 speedy trial request, none of White's subsequent actions can fairly be characterized as notice of a speedy trial request. His letter mailed to the Clerk of the District Court requesting information about the pending federal detainer was not received by the Government, nor placed in the court's docket. That letter did not include his CCI speedy trial request nor did it make a request for a speedy trial.

9

The Government alleges that White's reliance on *Gibson*, 777 F.2d at 1058, is misplaced because that Fifth Circuit decision has been trumped by *Fex*. Additionally, *Gibson* is factually distinguishable because White did not make a speedy trial request of the prosecutor in this case.

The Government contends that because July 14, 2004 is the date on which White delivered his speedy trial request to the district court and the Government, the district court correctly held that the IADA's 180-day clock began to run on that date. Consequently, the time to bring White to trial on the indictment had not expired at the time he moved to dismiss the indictment on November 10, 2004. White entered his guilty plea on December 17, 2004, almost one month before the Government claims that the 180-day clock would have expired on January 14, 2005. The Government contends, therefore, that the district court did not err in denying White's motion to dismiss.

This case is controlled by the Supreme Court's decision in *Fex*. We conclude there was no violation of the 180-day time period in the IADA. White's speedy trial request at CCI did not constitute notice "to be delivered to the prosecuting officer and the appropriate court." 18 U.S.C. App. § 2, Art. III(a). Pursuant to the plain language of the IADA, therefore, the Government did not violate the 180-day speedy trial clock of the IADA. White's speedy trial request was not made to the prosecutor and the

10

appropriate court, as is required by the IADA. *Id.* Moreover, the Supreme Court has stated that the applicable language of IADA is to be literally read. *See Fex*, 507 U.S. at 52 ("We hold that the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.").

Even assuming that substantial compliance with the IADA may sometimes be permissible, we conclude that this is not such a case. It would be unfair to penalize the Government in this case when neither the U.S. Attorney's Office nor the district court received notice of White's speedy trial request of CCI officials.

Because the request was actually delivered to the prosecutor and the court on July 14, 2004 and White pled guilty less than 180 days later, we find that there was no violation pursuant to the IADA. Accordingly, the district court committed no error in denying White's motion to dismiss the indictment.

B. Imposition of $5,000 fine

Citing *United States v. Booker*, 543 U.S. 220, 264 (2005), the parties contend that we review for unreasonableness the district court's decision to impose a $5,000 fine.

White alleges that the district court's imposition of a $5,000 fine was

unreasonable. He has a ninth grade education, no job skills and a limited employment history at temporary job services. White claims that it is unreasonable for the district court to expect him to pay a $5,000 fine over 51 months at an inmate's salary, or over a period of three years of supervised release as an ex-convict. Because of his indigency, White states he should be fined a reasonable amount that would not hinder his future rehabilitative efforts. He suggests a fine of $1,000, which is the amount that the probation officer recommended.

The Government notes that the $5,000 fine is at the bottom of the fine range of $5,000 to $50,000 under the Sentencing Guidelines. The Government claims that the district court's finding that White could pay such an amount over the course of his 51 months of imprisonment and three years of supervised release is not unreasonable.

This Court has previously questioned whether *Booker* applies to fines. *See United States v. Bucheit*, 134 Fed. Appx. 842, 862 n.11 (6th Cir. 2005). The court in *Bucheit* stated:

> To the extent Defendant contends the district court's fact-finding related to whether and in what amount to impose a fine violated the Sixth Amendment, we note the fine Guidelines ranges are a product of the offense of conviction and the applicable offense level. *See* U.S.S.G. § 5E1.2. Thus, even assuming *Booker* applies to fines, no constitutional violation would arise from the district court's conclusions as to Defendant's financial circumstances and/or ability to pay a fine because those factors would have no effect upon the fine Guidelines range, but only upon the district court's decision as to whether to impose a fine and

12

in what amount.

*Id.* (internal citation omitted).

Accordingly, because a fine does not involve the traditional "*Booker* problem" of a district judge making factual findings which would enhance a defendant's sentence, a judge's decision to impose a fine within the Guidelines range does not implicate the Sixth Amendment or any constitutional provision.

The fine in this case was at the low end of the Guidelines range. We conclude, therefore, that even assuming fines are reviewed for reasonableness (as the parties argue), the district court's imposition of a $5,000 fine in this case should be entitled to a rebuttable presumption of reasonableness. *See United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006) (concluding that sentences properly calculated under the Guidelines are entitled to a rebuttable presumption of reasonableness.). White has failed to rebut that presumption of reasonableness.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.