NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0431n.06
Filed: May 23, 2005

No. 03-4177

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| BERNARD J. BUCHEIT, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE:**   **NELSON and BATCHELDER, Circuit Judges; COLLIER, District Judge.**[*]

   **CURTIS L. COLLIER, District Judge**.  Defendant Bernard J. Bucheit ("Defendant")

appeals his convictions for conspiracy, providing an illegal gratuity, and perjury and the 24-month

sentence imposed as a result thereof by the United States District Court for the Northern District of

Ohio.  For the reasons set forth below, we **AFFIRM** Defendant's conviction, but **VACATE** his

sentence and **REMAND** for resentencing in light of this opinion and the Supreme Court's holding

in *United States v. Booker*, --- U.S. ----, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

### I.  FACTS AND PROCEDURE

---

   [*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

From the 1950s until the 1990s, Defendant owned and operated his family's construction business, Joseph Bucheit & Sons Company ("Bucheit & Sons"), based in Youngstown, Ohio. Defendant and his company were primarily engaged in commercial construction and by the 1970s had begun working on projects in the Middle East, specifically Kuwait and Saudi Arabia. When disputes or problems arose in those countries, Defendant often sought and received the assistance of his elected representatives. From 1985 until his expulsion from the United States House of Representatives in July 2002, James A. Traficant, Jr ("Traficant") was Defendant's congressman. In the late 1980s and early 1990s, Defendant encountered some difficulties relating to a contract he had entered into with Prince Mishaal Bin Abdul Aziz, a brother of King Faud of Saudi Arabia. Defendant was able to gain the assistance of Traficant, who performed a number of official acts on his behalf including contacting the Departments of State and Commerce, the Saudi ambassador to the United States, and King Faud himself; threatening legislative action adverse to the Saudi government; introducing a congressional resolution; and personally testifying before the House Foreign Relations Subcommittee. Ultimately, Defendant was able to reach a significant settlement with Prince Mishaal.

In the spring of 1993, Traficant asked Defendant to come out to his farm to inspect some storm damage to his father's farmhouse. Defendant then secured and paid a variety of subcontractors to perform more than $30,000 worth of carpentry and electrical work on the farmhouse during the summer and fall of 1993. In October 1993, Defendant sent Traficant a bill for $27,217. Traficant did not pay the bill and Defendant made no immediate effort to collect.

Traficant purportedly told Defendant he could not pay the bill because of tax liens and garnishments he was facing and Defendant agreed they would "settle it out."

By 1995, Defendant had retired and had helped his children start a new company, Bucheit International Limited Corporation ("Bucheit International"), which was focused on setting up new businesses in the Middle East including a concrete manufacturing plant in the Gaza Strip. As problems arose with this venture, Traficant continued to assist Defendant by performing additional official acts including contacting the Vice President of the United States, the Overseas Private Investment Corporation ("OPIC"), the Secretary of State, and, at one point, a Kuwaiti bank; threatening legislation adverse to the Palestinian Authority; and inserting language into an appropriations bill. According to Defendant's own grand jury testimony, he met with Traficant on numerous occasions in connection with matters relating to Bucheit International's problems and at least on some of those occasions would ask about Traficant's IRS problems and if he would be able to pay the bill for the work done on the farm. Traficant would respond by indicating his financial problems were still an issue and Defendant would pursue the matter no further.

In the fall of 1999, the FBI began investigating Traficant's dealings and a federal grand jury was convened. Defendant was subpoenaed and, on August 15, 2000, testified before the grand jury. Defendant testified that, among other things, Traficant never asked him for any personal favors and the work done on Traficant's farm was intended to be a regular job for a paying customer. On January 4, 2002, the grand jury handed up a three-count indictment charging Defendant with (1) conspiracy to violate the federal gratuity statute in violation of 18 U.S.C. §§ 201(c)(1)(A), 201(c)(1)(B), and 347; (2) providing an illegal gratuity in violation of 18 U.S.C. § 201(c)(1)(A); and

(3) perjury in violation of 18 U.S.C. § 1623(a). After being initially given appointed counsel, Defendant retained the services of Attorney Roger Synenberg to represent him. Prior to trial, Defendant filed a motion in limine seeking to prohibit the Government from introducing a briefing memorandum prepared by a Government witness, but the district court denied the motion.

Defendant's trial began on April 22, 2003, and following the close of the Government's evidence Defendant moved for acquittal on the first and second counts of the indictment arguing Count Two failed to state an offense and Counts One and Two were barred by the applicable statute of limitations. The district court took Defendant's motion under advisement and proceeded with the trial. Upon close of his evidence, Defendant renewed the motion and on April 28, 2003, the district court issued a written opinion denying the motion as untimely brought. Counsel for Defendant also presented a number of objections or proposed modifications to the proposed jury charge, all of which were denied. The jury was charged on April 29, 2003, and returned the following day with a verdict of guilty on all counts. On August 25, 2003, Defendant was sentenced to terms of imprisonment of 24 months on Count One, 12 months on Count Two, and 24 months on Count Three, all such terms to run concurrently, and fined $5,000. Defendant appealed and on August 5, 2004, a separate panel of this Court granted Defendant's motion seeking leave to file supplemental briefs based on the Supreme Court's June 24, 2004, ruling in *Blakely v. Washington*, 542 U.S. ----, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

## II. DISCUSSION

Defendant raises several issues on appeal. Defendant contends his conviction and/or sentence should be vacated because (1) the district court erred in denying as untimely his motion for

judgment of acquittal on the first and second counts of the indictment; (2) the district court erred by admitting certain evidence and testimony over Defendant's objections; (3) the district court erred by failing to correctly instruct the jury; (4) insufficient evidence existed to support Defendant's conviction on any and all of the three counts in the indictment; (5) Defendant was denied effective assistance of counsel at the trial level; and (6) the sentence imposed by the district court violated the dictates of *Blakely*. The Court will address each argument in turn.

## A.     Statute of Limitations

Following the close of the Government's case-in-chief, Defendant moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 arguing Count Two failed to state an offense and Counts One and Two were both barred by the applicable statute of limitations. The district court denied Defendant's motion after concluding both arguments should have been raised prior to trial and, therefore, had been waived pursuant to Rule 12(f).[1] On appeal, Defendant does not appear to challenge the district court's ruling as to his claim Count Two failed to state an offense, but argues the district court "erroneously sidestepped" the merits of his statute of limitations arguments by concluding they were untimely. Rule 12(b)(3) requires certain motions to be raised "before trial" including "a motion alleging a defect in instituting the prosecution," Fed. R. Crim. P. 12(b)(3)(A),

---

[1]It should be noted the district court appears to have applied the 2002 Second Revised Edition of the Federal Rules of Criminal Procedure despite the fact the 2003 version was in effect at the time of Defendant's trial. Thus, the applicable rule was technically Rule 12(e) rather than Rule 12(f). The 2002 Amendments to the rules altered the organization and wording of all of the provisions relating to this issue, however, those revisions were not intended to render any substantive changes in practice. *See* Fed. R. Crim. P. 12, Advisory Committee Notes, 2002 Amendments. For propriety's sake, the language and numbering from the 2003 version are quoted and cited hereinafter.

and "a motion alleging a defect in the indictment or information" except that a defendant may "at any time while the case is pending" raise a claim the indictment or information "fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). Rule 12(e) then provides "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides." Accordingly, the question before the Court is simply whether Defendant's statute of limitations argument constitutes a matter which Defendant was required to raise prior to trial and waived by failing to do so.

This Court's case law on the nature and waivability of a statute of limitations defense is rather ambiguous and, in some cases, flat-out contradictory. There appear to be four primary cases on this matter. First, in *Benes v. United States*, the Court reversed an income tax evasion conviction on statute of limitations grounds even though the Government and the defendant had entered into an agreement under which the Government would not present certain evidence to the grand jury pending the resolution of an appeal by the defendant from an adverse ruling in a separate civil action seeking to enjoin the Government from presenting that evidence to the grand jury. 276 F.2d 99, 108-09 (6th Cir. 1960). In doing so, the Court reasoned "the purpose of statutes of limitations is to afford immunity from punishment" and such statutes are therefore construed "as creating a bar to the right of prosecution." *Id.* Accordingly, the Court held the defendant had not waived the defense either by failing to raise the issue before the district court, by entering into an agreement with the Government pursuant to which the prosecution was withheld, or by procuring multiple continuances in the civil case until the statute of limitations had run. *Id.* at 109.

Almost thirty years later in *United States v. Del Percio*, this Court was faced with a situation where the defendants had signed waivers expressly extending the statute of limitations on conspiracy and false statement charges, apparently believing further investigation by authorities would clear their names. 870 F.2d 1090, 1091-92 (6th Cir. 1989). The Government then brought criminal charges outside the original limitations period, but the district court dismissed the indictment interpreting the holding in *Benes* as making the statute of limitations a non-waivable bar to the defendants' prosecution. *Id.* at 1092. The Court expressed doubt regarding the wisdom of the *Benes* ruling by noting "every [other] circuit court of appeals to address the issue has held that criminal statutes of limitations are waivable affirmative defenses that do not affect the subject matter jurisdiction of the courts" and, therefore, concluded the *Benes* opinion should be construed narrowly. *Id.* at 1093. Because the defendants in *Del Percio* had explicitly agreed to extend the limitations period as such, the Court concluded *Benes* was distinguishable on that basis and reversed the district court's ruling. *Id.* at 1092-93.

More recently, in *United States v. Craft*, the Government appealed a district court order granting a pretrial motion filed by the defendant and dismissing two counts of the indictment as time-barred. 105 F.3d 1123, 1125-26 (6th Cir. 1997). The Government argued, *inter alia*, the defendant's motion was not suitable for pretrial disposition. *Id.* at 1126. Without discussion and generally citing *Del Percio*, the Court stated "[t]he statute of limitations is an affirmative defense that may be waived under [Rule 12(e)] if not raised at or before trial." 105 F.3d 1123, 1127 (6th Cir. 1997). The Court further stated "[i]t is therefore proper, and in some cases may be necessary, to raise the question" in the form of a pretrial motion. *Id.* The Court went on to affirm the district

court's ruling, holding since the facts relating to the statute of limitations issue were all either alleged in the indictment or constituted "preliminary facts easily isolated from the issues on the merits," the matter was purely a legal issue and was properly considered by the district court prior to and independent of a trial on the merits. *Id.*

An unpublished opinion later relied on *Craft* in holding a statute of limitations challenge premised on the face of the indictment *must* be made in a pretrial motion or the issue is waived. *United States v. Collake*, 134 F.3d 372, 1998 WL 25007, at *5 (6th Cir. 1998) (unpublished table opinion). However, in *United States v. Crossley*, a defendant raised a fact-based statute of limitations argument for the first time on appeal. 224 F.3d 847, 858 (6th Cir. 2000). The Court discussed *Benes* and *Del Percio* in detail before concluding "absent an explicit waiver, the statute of limitations presents a bar to prosecution that may be raised for the first time on appeal." *Id.* In a footnote, the Court addressed the holding in *Craft* and explained that case was not controlling "because the defendant in *Craft* had raised the statute-of-limitations defense, and the court only had to determine whether the statute-of-limitations defense involved essentially undisputed factual issues that could be isolated from the merits such that the district court could issue a decision on the defense before trial." *Id.* at 858 n. 3.

Finally, in *United States v. Titterington*, the Government appealed a district court order dismissing an indictment based upon a reading of *Crossley* as holding the statute of limitations operates as a "jurisdictional bar" and, therefore, an indictment must allege the charged crime occurred within the applicable limitations period or that such period had been tolled. 374 F.3d 453, 455 (6th Cir. 2004); *see also United States v. Titterington*, 2003 U.S. Dist. LEXIS 8887, at *4 & n.

1 (W.D. Tenn. May 22, 2003) (unpublished decision). This Court reversed, relying primarily on the

holding in *United States v. Cook*, 17 Wall. 168, 178-80, 84 U.S. 168, 178-80, 21 L. Ed. 538 (1872)

(holding time is not an element of the offense and concluding statute of limitations could not be

raised by demurrer, but had to be raised by special plea or by presenting evidence under the general

issue), and finding nothing in *Crossley* requiring the Government to affirmatively plead the statute

of limitations in order to vest the courts with jurisdiction over the indictment. 374 F.3d at 456-58.

Despite *Crossley*'s characterization of the statute of limitations as a "bar to prosecution," the Court

noted "not every issue that may be raised for the first time on appeal is jurisdictional." *Id.* at 458.

Relying on the Supreme Court's reasoning in *Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906, 157

L. Ed. 2d 867 (2004) (distinguishing provisions relating to personal or subject matter jurisdiction

from bankruptcy debtor's challenge to creditor's objection to discharge as untimely even though

both may be raised "at any time in the same civil action, even initially at the highest appellate

instance") and *Crossley*'s own holding that statute of limitations defenses can be waived at least in

some circumstances, the Court explained courts' somewhat reckless use of the term "jurisdictional"

when referring to certain timing rules does not raise those matters to the level of subject matter

jurisdiction (*i.e.*, the courts' constitutional or statutory power to adjudicate a case). 374 F.3d at 458-

59. The Court further noted the Double Jeopardy and Ex Post Facto Clauses are generally

considered "bars to prosecution," yet compliance with such constitutional provisions need not be

alleged in an indictment. *Id.* at 459-60.

Thus, the Sixth Circuit appears to hold the statute of limitations is not "jurisdictional" in the

sense it must be alleged in the indictment and/or can never be waived, but is nevertheless of such

primary importance that it can be raised for the first time on appeal and may be relinquished only upon an explicit, knowing, and voluntary waiver. Despite the seemingly clear pronouncement in *Craft*, the controlling case on the present matter would appear to be *Crossley*. Accordingly and despite contrary holdings in every other circuit save one,[2] Defendant is entitled to raise his statute of limitations argument at any time, whether that be prior to or after the motion deadline, prior to, during or after trial, or even for the first time on appeal.

The Government seeks to distinguish *Crossley* by noting that case involved a factual statute of limitations issue rather than a facial challenge to the indictment such as advanced by Defendant (Brf. of Appellee at 23-25). This factual-facial dichotomy is the approach taken in the unpublished *Collake* case, 1998 WL 25007, at *5, and by most other circuits. *See, e.g.*, *United States v. Ramirez*, 324 F.3d 1225, 1227 (11th Cir. 2003) (holding a statute of limitations claim based solely on the facial sufficiency of the indictment is waived if not raised before trial and otherwise in accordance with Rule 12). However, the only portion of the *Crossley* opinion even remotely suggesting such a limitation is the footnote addressing the holding in *Craft*. Arguably, that footnote could be read to distinguish *Craft* on either of two bases: (1) the nature of the statute of limitations argument raised by the defendant in that case (*i.e.*, facial versus factual), or (2) the nature of the issue before the Court in that case (*i.e.*, propriety versus necessity of a pretrial motion). *See* 224 F.3d at 858 n. 3. We find the latter interpretation more appropriate. The *Crossley* court quite clearly concluded

---

[2]*See United States v. Cooper*, 956 F.2d 960, 961-62 (10th Cir. 1992) (holding statute of limitations defense under 18 U.S.C. § 3282 is a jurisdictional bar to prosecution which must be expressly waived by the defendant).

*Craft* was not controlling because the issue addressed in that case was whether a motion which *had*

been filed prior to trial *could* be ruled upon at that time. In any event, the waiver issue was certainly

not before the Court in *Craft* and was in no way central to the holding. Further, *Benes* and *Del*

*Percio* make no reference to any distinction between factual and facial statute of limitations

arguments. Therefore, *Crossley* would appear to offer the definitive word on waiver, and under

*Crossley* a statute of limitations defense, whether based on the face of the indictment or the facts

adduced at trial, is only waived when such waiver is knowing, voluntary, and explicit. *See* 224 F.3d

at 858. waiver vs. forfeiture *see also United States v. Thurston*, 358 F.3d 51, 62-63 (1st Cir. 2004)

*Crossley* does, however, present us with a quandary in that its broad pronouncement would

seem to conflict with Rule 12(b)(3)(A)'s express requirement motions alleging "a defect in

instituting the prosecution" be raised "before trial." As a linguistic matter, we fail to see how the

untimely bringing of an indictment could be considered anything but "a defect in instituting the

prosecution." However, we need not determine whether this Court's case law and the Federal Rules

of Criminal Procedure are in conflict and, if so, which takes precedence, because Defendant's statute

of limitations argument is not the purely facial challenge the Government claims it to be. Nowhere

in his Rule 29 motion or appellate briefs does Defendant so limit his argument and, in fact,

Defendant makes repeated references to the proof adduced at trial (*see also* Reply Brf. at 2-5).[3]

---

[3]Moreover, were Defendant's arguments limited to the face of the indictment they would be
nonstarters since the indictment quite clearly alleges the conspiracy in Count One continued through
"on or about the date of this indictment," specifies fourteen overt acts in furtherance of the
conspiracy falling within the limitations period, and alleges the substantive gratuity offense in Count
Two continued "until on or about August 15, 2000" (JA at 3, 11-14, 15).

Thus, Defendant's statute of limitations argument would appear to be at least partially factual and does not so much allege "a defect in instituting the prosecution" as it alleges a defect in the proof adduced a trial. Accordingly, even if we were to determine the express terms of Rule 12(b)(3)(A) operate to limit the otherwise broad holding of *Crossley* or adopt the sort of facial-factual dichotomy suggested by the Government and applied in *Collake*, Defendant's statute of limitations argument would still have been timely raised. As such, the district court erred in denying Defendant's motion on timeliness grounds.[4]

Proceeding to the merits of Defendant's argument, the applicable statute of limitations for both Counts One and Two is the five-year general federal limitations period provided for by 18 U.S.C. § 3282. Defendant's arguments as to both counts rely heavily on the Supreme Court's ruling in *United States v. Sun-Diamond Growers of Calif.*, 526 U.S. 398, 119 S. Ct. 1402, 143 L. Ed. 2d 576 (1999). Generally, 18 U.S.C. § 201(c)(1)(A) makes it unlawful for a person to "give[], offer[], or promise[] anything of value to a public official . . . for or because of any official act performed or to be performed by such public official." In *Sun-Diamond*, the Supreme Court held that to establish a violation of the federal gratuity statute the Government must prove a link between a thing

---

[4]It should be noted the district court also misquoted *Craft*. The district court quoted *Craft* for the proposition the statute of limitations is an affirmative defense subject to waiver "'if not raised before trial'" (JA at 147). However, as noted by Defendant in his brief, *Craft* actually states such defenses are waived "if not raised *at or* before trial." 105 F.3d at 1127 (emphasis added). Because Defendant raised the issue during the course of trial, he technically complied with the rule as stated by the *Craft* decision. Nevertheless, Rule 12 clearly requires Rule 12(b)(3) motions to be filed *before* trial or whatever motion deadline the district court may set pursuant to Rule 12(c). Thus, even assuming *Craft* is the controlling statement of law, it would appear to be contradicted by the rules themselves.

- 12 -

of value conferred on a public official and a specific official act for or because of which the thing of value was given. 526 U.S. at 414, 119 S. Ct. at 1411. Thus, the statute is not violated where a gift is conferred only in an attempt to buy favor or generalized goodwill or motivated by the recipient's mere capacity to exercise governmental power or influence in the donor's favor. *See id.* at 405-06, 119 S. Ct. at 1406-07.

Count One alleges a conspiracy to violate 18 U.S.C. § 201(c) beginning "in or around April 1993" and continuing "through on or about the date of this indictment"(JA at 3). Specifically, Count One charges Defendant and an unnamed relative "would directly and indirectly give, offer, and promise things of value to Congressman Traficant for and because of official acts performed and to be performed by Congressman Traficant" and Traficant would "demand, seek, receive, and accept" such things of value "for and because of" past and future official acts (JA at 4). The indictment further alleges Traficant performed specified official acts on behalf of Defendant from March 1990 through December 1992 in connection with Defendant's dispute with Prince Mishaal, Traficant then requested Defendant find someone to do repairs on the farmhouse in early 1993, Defendant did so and billed Traficant, the invoice was never paid, Traficant requested Defendant withhold collection on the debt, and during the time Traficant owed but was failing to pay the invoice Traficant performed further official acts at Defendant's request (JA at 4-9). The indictment then alleges 39 overt acts in furtherance of the conspiracy spanning from April 18, 1993, to March 7, 2000 (JA at 9-14).

Generally, as long as at least one overt act in furtherance of a conspiracy is committed within the limitations period, the statute of limitations is not violated. *United States v. Smith*, 197 F.3d 225,

228 (6th Cir. 1999); *see also Brown v. Elliott*, 225 U.S. 392, 401, 32 S. Ct. 812, 815, 56 L. Ed. 1136 (1912). Fourteen of the overt acts alleged in the indictment occurred within five years of the bringing of the indictment on January 4, 2002 (*see* JA at 11-14). All but one of these overt acts allege certain official acts taken by Traficant on behalf or for the benefit of Defendant or Bucheit International. The only exception, Overt Act 28, alleges Defendant sent a letter to Traficant on or about July 28, 1997, requesting action or assistance regarding problems Defendant was having with a bank in Gaza (JA at 11). None of these fourteen overt act allegations makes any reference to or mention of the provision or offer of any "thing of value" in exchange for these official acts. Defendant contends none of these alleged overt acts furthered the main object of the alleged conspiracy, therefore, they cannot operate to extend the statute of limitations. According to Defendant, "a violation of 18 U.S.C. § 201(c) is complete the moment a gratuity is offered or received with the requisite intent," therefore, the object of the alleged conspiracy (*i.e.*, the demanding, giving, and receiving of things of value for official acts) was complete in 1993 and Traficant's alleged performance of official acts in 1997 and beyond is irrelevant since it "could not have furthered the main object of giving and receiving a gratuity" (Brf. of Appellant at 46-47). Further, Defendant argues the linkage required by *Sun-Diamond* is not present as to Traficant's alleged officials acts in 1997 and beyond because there is no evidence that when the work was done in 1993 Traficant had committed to perform any specific official acts four years or more into the future.

The Government counters by arguing the conspiracy continued until the time of the indictment because both participants continued to reap economic gains, specifically Defendant

"continued to seek official acts from Traficant while the bill for completing work at the farm remained unpaid" (Brf. of Appellee at 28-29). Thus, under the Government's characterization of the conspiracy, the thing of value was Defendant's act of withholding collection on the 1993 debt, and Traficant's official acts from 1997 on were performed on that basis. Count One clearly alleges such a characterization of the object and execution of the conspiracy and the jury obviously accepted that characterization in returning a verdict of guilty. Further, there was proof in the record in the form of Defendant's own grand jury testimony which would support the jury in concluding Defendant and Traficant discussed the outstanding bill and/or Traficant's ability to pay it during or in connection with requests Traficant perform official acts on Defendant's behalf (*see* JA at 259-60). According to the Government's theory, which the jury apparently accepted, Defendant would go to Washington, D.C., and remind Traficant of the debt; Traficant would express an inability to pay due to problems with the IRS; Defendant would relent and then request official acts. Thus, the thing of value involved in the conspiracy was not the provision of the work itself, but Defendant's forbearance of any attempt to collect on the bill for that work.

Since this was the theory the Government alleged and the jury presumably accepted, the only question that remains is whether such a theory is proper as a legal matter. Defendant cites only one case in support of his argument, *United States v. Roshko*, 969 F.2d 1 (2d Cir. 1992). In *Roshko*, the defendants, a husband and wife who were both Israeli nationals, were charged with conspiring to defraud the Government by making false statements to a government agency and by obstructing an INS proceeding. *Id.* at 2. The Government's theory at trial and on appeal was that the husband had entered into a sham marriage with a United States citizen in order to obtain a green card and then

divorced that individual and married his actual wife in order that she would also attain legal residency. *Id.* at 2-3. However, the indictment had alleged the husband's receipt of a green card as the only object of the conspiracy. *Id.* at 2, 5-6. The United States Court of Appeals for the Second Circuit ("Second Circuit") concluded the Government's theory and evidence had constructively amended the indictment's otherwise narrow language to make the wife's changed immigration status an object of the conspiracy. *Id.* at 6. Accordingly, the Second Circuit held, *inter alia*, the conspiracy terminated once the INS issued a green card to the husband and neither the husband's divorce out of the sham marriage nor his subsequent marriage to his actual wife constituted overt acts in furtherance of the conspiracy. *Id.* at 8-9. Since the latter two overt acts were the only ones alleged to have occurred within five years of the issuance of the indictment, the court held the conviction was barred by the statute of limitations. *Id.* Defendant contends the main object of the conspiracy in this case was the demand, conferral, and receipt of things of value for official acts and, just like the conspiracy in *Roshko* whose primary object was the issuance of a green card, that object was achieved in full and the conspiracy was terminated more than five years before the indictment was handed up.

*Roshko* would be on point and Defendant's argument would be persuasive if the indictment's allegations limited the scope of the conspiracy to the giving of a gratuity in 1993 for official acts performed in 1992. However, this is not the case. The indictment clearly alleges the object of the conspiracy was to solicit/offer forbearance of a debt in exchange for the performance of official acts. In fact, Count One never specifically alleges the 1993 work was provided with the understanding and/or intent Traficant would not pay the bill. Rather, the crux of the alleged conspiracy involves

the withholding of collection on that debt. Implicit in the Second Circuit's holding in *Roshko* is the assumption that if the Government had charged the object of the conspiracy was also to fraudulently obtain legal residency for the wife, then the statute of limitations would not have barred the prosecution. The indictment in this case was not so limited, therefore, nothing in *Roshko* compels reversal of Defendant's conviction. Further, the Court specifically instructed the jury it had to conclude at least one of the overt acts alleged in the indictment occurred after January 4, 1997 (JA at 433-34).

Count Two of the indictment alleges "[f]rom in or about April, 1993 and continuing until on or about August 15, 2000, . . . . for and because of official acts relating to [Defendant's] business affairs in Saudi Arabia during the period 1990-93 and Gaza during the period 1994 to the date of this indictment, [Defendant] allowed Congressman Traficant not to pay for substantial carpentry and electrical work which [Defendant] had caused to be done at Congressman Traficant's farm, took no collection action against Congressman Traficant, and did not charge him any interest" (JA at 15). Typically, "the statute of limitations begins to run when each element of the crime has occurred and the crime is complete." *Crossley*, 224 F.3d at 859; *United States v. Lutz*, 154 F.3d 581, 586 (6th Cir. 1998). Defendant argues the *Sun-Diamond* linkage between the gratuity and the specific official act "must exist in the mind of the actor" and, therefore, the crime is complete once the gratuity is given with the requisite intent and the statute of limitations begins to run from that point (Brf. of Appellant at 42). However, as noted above, the Government's allegations and theory characterize the thing of value forming the basis of the offense as the withholding of collection and interest charges on the debt owed for the work performed in 1993, not the provision of the work itself. The Government

points to Defendant's own testimony before the grand jury claiming he believed Traficant's unpaid

bill was an outstanding debt and that he had raised the matter with Traficant on several occasions

but he had always responded by citing problems with the IRS. Defendant further testified that

during those same conversations he and Traficant discussed the problems Bucheit International was

having with its investments in the Gaza Strip (JA at 259-60). Thus, the Government contends, there

was sufficient evidence to show a link between the thing of value (foregoing collection) and the

official acts Traficant took from 1997 to 2000, all falling within the statute of limitations.

Defendant contends Count Two effectively alleges a continuing offense, something which

is neither sanctioned nor contemplated by the statute. A continuing offense is an offense which

spans a period of time rather than a discrete act. Generally, when the period specified in the

continuing offense spans the applicable statute of limitations period, prosecution is not barred as

long as the proscribed course of conduct continues into the limitations period. *See Toussie v. United*

*States*, 397 U.S. 112, 115, 90 S. Ct. 858, 860, 25 L. Ed. 2d 156 (1970). However, a continuing

offense may be charged only where either (1) the explicit language of the substantive criminal

statute compels the conclusion Congress intended the statutory offense to be treated as continuing

for limitations purposes, or (2) the nature of the offenses charged is such that Congress must

assuredly have intended that they be treated as continuing ones. *Id.*; *see also Del Percio*, 870 F.2d

at 1095-97 (finding alleged failure to submit plans and schedules for making nuclear power plant

modifications and to implement such modifications in accordance with prescribed timetable in

violation of 42 U.S.C. §§ 2131, 2272, and 2273(a) were not continuing offenses, thus limitations

period began to run when submissions were first due). Defendant argues the offense was complete

the moment the gratuity was given and/or accepted with the requisite intent and to hold otherwise would create a continuing offense in the absence of any congressional intent to do so. Again, this would be a good argument if the indictment alleged Defendant provided services to Traficant with no intention of ever collecting on the bill for that work and the Government was arguing the statute of limitations was tolled every day Traficant enjoyed the benefit of that work without having to make a payment or accrue any interest. *See United States v. Hare*, 618 F.2d 1085, 1087 (4th Cir. 1980) (holding where illegal gratuity came in form of loan with favorable interest and payment provisions, offense was complete once loan was made and limitations period was not extended simply because defendant-official continued to benefit from the gratuity every time he made a payment). However, Defendant is not alleged to have committed a single crime which had continuing effects. Rather, Defendant is charged with accepting numerous illegal gratuities in the form of collection forbearances over an extended period of time, each in exchange for a different official act. *See United States v. Bustamante*, 45 F.3d 933, 942 (5th Cir. 1995) (holding eight separate illegal gratuity counts amounted to course of conduct and statute of limitations did not begin to run until last alleged gratuity occurred). Although other circuits have adopted a variety of positions on the application of *Toussie* to alleged courses of criminal conduct, *see United States v. Yashar*, 166 F.3d 873, 876-80 (7th Cir. 1999) (discussing cases and holding offense is committed and limitations period begins to run once all elements of the offense are established, regardless of whether the defendant continues to engage in criminal conduct), in the present case the Government has alleged, argued, and proven Defendant conferred a specific thing of value on Traficant in exchange for specific official acts within the limitations period. In fact, the Government could

conceivably have charged several gratuity counts based on the official acts and corresponding agreement of forbearance.[5] If there were no allegations or proof the official acts taken by Traficant during the limitations period were done for any other reason than Defendant's provision of services back in 1993, then there would likely be a problem. However, that is not the case.

This is not to say the Government may circumvent the statute of limitations by artful wording and manufacture independent things of value allegedly given for specific official acts where, in fact, only one gratuity was given. Surely a single gratuity given to a public official cannot taint all future dealings with and actions of that public official in perpetuity. However, in this case the Government alleged, presented evidence, and convinced the jury Defendant requested specific official acts under conversational circumstances at least supporting an inference of a promise to withhold collection on an outstanding debt, all within the limitations period. Accordingly, even though the district court erred in holding Defendant's motion to dismiss had been untimely brought, we nevertheless conclude Counts One and Two are not barred by the five-year statute of limitations. As a result, reversal is not warranted on this ground.

## B.    Evidentiary Rulings

Defendant next argues the district court abused its discretion both by admitting the Government's Exhibit No. 57 and by permitting the Government to play the videotaped deposition of a former Traficant staffer, Kimberly Harris-Bliton, in which she testified about conversations she

---

[5]Admittedly, this suggests the indictment may well have contained a great deal of prejudicial surplusage, but it is unclear whether Defendant raised this argument below and, in any event, he certainly does not do so on appeal.

had with unidentified OPIC officials. Harris-Bliton was the staffer assigned to work on Defendant's

problems with investments in Gaza during the late 1990s. She testified she had developed some

concerns about the legitimacy of Defendant's claims following a conversation with some OPIC

officials. Through Harris-Bliton, the Government introduced Exhibit No. 57, a briefing memo

produced by Harris-Bliton to prepare Traficant for an upcoming meeting with Defendant and OPIC.

The two-page briefing memo (JA at 71-72) conveys the following specific information Harris-Bliton

claims OPIC had brought to her attention: (1) Defendant could not account for $600,000 of the

$900,000 loan he had received from OPIC; (2) Defendant had made conflicting statements as to

whether his company had partners or directors; (3) Defendant had wanted OPIC to "go after" certain

debts or property which were insufficient to satisfy the loan; (4) Defendant had signed over a

building in Washington, D.C., to pay his debt, but OPIC had been required to spend $200-300,000

just to preserve the asset because Defendant had neglected to tell OPIC he had failed to pay

municipal taxes or for insurance on the building, the city was about to foreclose, and a lien had been

placed on the property by a creditor. Harris-Bilton noted Defendant had never mentioned these

matters to Traficant's office and concluded the memo by stating "OPIC is still willing to help Mr.

Bucheit, but wanted us to know that he has not always been forthcoming and has continuously

misrepresented the facts" (JA at 72). Prior to trial, Defendant filed a motion in limine seeking to

exclude Exhibit No. 57 arguing it amounted to hearsay and/or inadmissible Rule 404(b) evidence

and its relevance, if any, was substantially outweighed by the danger of unfair prejudice. The

district court denied the motion and admitted the evidence and testimony on the basis it was not

being offered to prove the truth of the matter asserted or to prove Defendant's bad character, but

rather to demonstrate Harris-Bliton's state of mind and the Court provided a limiting instruction to that effect.

On appeal, Defendant contends the admission of this evidence was overwhelmingly prejudicial and made him look like a man who "didn't pay his bills, didn't pay his taxes, and was otherwise involved in questionable conduct" (Brf. of Appellant at 51). A district court's decision to admit testimony and other evidence is reviewed for an abuse of discretion. *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999). However, even if the district court abuses its discretion in making an evidentiary ruling, this Court will not reverse a conviction on that basis unless the "substantial rights" of a party are affected. *United States v. Tocco*, 200 F.3d 401, 414 (6th Cir. 2000). The Government contends the evidence was not offered for any improper purpose and maintains it was offered only to show Harris-Bliton's state of mind (*i.e.*, her concern about continuing to assist Defendant) and Traficant's reaction when she raised those issues with him. The Government notes it did not emphasize the memo either during questioning of Harris-Bliton or in closing arguments and argues it was "directly relevant to show the nature of the improper relationship between Defendant and Traficant that was the crucial issue in this case" (Brf. of Appellee at 36-37). The briefing memo undoubtedly contains out-of-court statements by unidentified declarants, but it is not hearsay since it was not offered for the truth of the matter asserted. Fed. R. Evid. 801(c). At least as presented by the Government, the significance of the statements lies solely in the fact they were made and does not depend on their truth. Of course, the non-hearsay statements must still be relevant to some matter in issue. It was not so much Harris-Bliton's state of mind that was at issue as it was Traficant's response when she communicated her

state of mind to him. The fact Harris-Bliton continued to work on the matter at Traficant's direction following these revelations provides at least a minimal basis for inferring Traficant was not aiding Defendant simply because he was a constituent.

However, the evidence is still subject to exclusion if its unfair prejudicial effect substantially outweighs its probative value. Fed. R. Evid. 403. Although the briefing memo and Harris-Bliton's testimony was not, in and of itself, overwhelmingly probative of the proposition in support of which it was offered, that proposition was the central issue in the case (*i.e.*, whether Traficant was performing officials acts for Defendant based on having been provided with a thing or things of value). "Unfair prejudice" means "the undue tendency to suggest a decision on improper considerations; it 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence.'" *Doe v. Claiborne County*, 103 F.3d 495, 515 (6th Cir. 1996) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). In reviewing Rule 403 challenges to the district court's decision to admit certain evidence, we are to view the evidence in the light most favorable to the prosecution; that is, maximizing the probative value of the evidence and minimizing its potential prejudice to the defendant. *United States v. Logan*, 250 F.3d 350, 368 (6th Cir. 2001). "Moreover, the prejudice to be weighed is the *unfair* prejudice caused by admission of the evidence. Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996) (emphasis in original). The potential for unfair prejudice in this case was not slight and perhaps it is conceivable a judge might conclude that prejudice substantially outweighed the

probative value of Exhibit No. 57 and Harris-Bliton's testimony. However, it cannot be said it was an abuse of discretion for the district court to fail to do so.

Even if the Court were to conclude the district court abused its discretion either in concluding the briefing memo was not hearsay or in performing the Rule 403 balancing, Defendant must still show the admission of the evidence affected his substantial rights. *Tocco*, 200 F.3d at 414. In questioning and argument, the Government did not play up the potentially prejudicial implications of the nature of the information which caused Harris-Bliton to be concerned, but focused almost exclusively on the fact of her concern (*see* JA at 365-72, 441, 445-46). Further, the district court gave an explicit limiting instruction both before playing Harris-Bliton's testimony and when charging the jury (JA at 346-47, 426-27). Defendant has pointed to no specific proof indicating the district court, prosecutor, or jury gave the potentially prejudicial aspects of the briefing memo any undue emphasis. Defendant has simply asserted, in rather dramatic fashion, the briefing memo and Harris-Bliton's testimony "unfairly and prejudicially impugned [Defendant's] very character, and left him no means by which to counter that prejudice" (Brf. of Appellant at 53).

Moreover, the Government presented substantial additional evidence of Defendant's guilt. The somewhat tenuous inference to be drawn from Traficant's generally nonexistent reaction to Harris-Bliton's concerns in the briefing memo is very minor in light of the other testimony and evidence offered by the Government. Thus, we can say with fair assurance the error did not influence the jury or had a very slight effect, therefore any error by the district court was harmless and did not affect Defendant's substantial rights. *See United States v. Kone*, 307 F.3d 430, 441 (6th Cir. 2002) (holding admission of impermissible hearsay was not grounds for reversal in light of

other overwhelming evidence of defendant's guilt); *United States v. Price*, 134 F.3d 340, 349 (6th Cir. 1998) (same).

## C.    Jury Instructions

Defendant next contends the district court "improperly and erroneously" instructed the jury by failing to adopt three of his requests. A district court's instructions to the jury are reviewed *de novo* to determine whether they are a correct interpretation of the relevant law, *Rogers v. T.J. Samson Cmty. Hosp.*, 276 F.3d 228, 232 (6th Cir. 2002), and "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." *Vance v. Spencer County Public Sch. Dist.*, 231 F.3d 253, 263 (6th Cir. 2000). *See also Gibson v. City of Louisville*, 336 F.3d 511, 512 (6th Cir. 2003). The district court has broad discretion in drafting and choosing the instructions to give and only abuses that discretion if the charge "fails accurately to reflect the law." *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999). A district court's refusal to use particular language requested by a party is not error so long as "the instruction as given is accurate and sufficient." *United States v. Horton*, 847 F.2d 313, 322 (6th Cir. 1988). The refusal to give a requested instruction is grounds for reversal only if the rejected instruction is "(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991); *see also United States v. Daniel*, 329 F.3d 480, 489 (6th Cir. 2003); *United States v. Mack*, 159 F.3d 208, 218 (6th Cir. 1998).

Defendant contends the district court first erred in rejecting his request a sentence or phrase explaining the requisite *mens rea* be added to the instruction distinguishing conspiracy from a substantive crime. Defendant claims he asked the charge be amended to include the phrase "knowingly, willfully, and voluntarily."[6] However, the instruction actually given by the district court stated the elements of the conspiracy charge as follows:

> First, that two or more persons *willfully* conspired or agreed to commit the crime of illegal gratuity.
> Second, that the Defendant *willfully* joined the conspiracy.
> Third, that a member of the conspiracy *knowingly* did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.
> . . . .
> If you are convinced that there was a criminal agreement, then you must consider the second element and decide whether the Government has proven beyond a reasonable doubt that the Defendant *willfully* joined that agreement. For you to convict the Defendant, the Government must prove that he knew the conspiracy's main purpose, and that he *voluntarily* joined the conspiracy intending to help advance or achieve its goal.
> . . . .
> When the word "*willfully*" is used in these instructions, it means a deliberate or intentional act as distinguished from an accidental, inadvertent, or negligent one.

(JA at 429-30, 431-32, 435) (emphasis added). The district court's instructions generally track the Sixth Circuit pattern conspiracy instructions. *See* U.S. Sixth Circuit Judges Association, Pattern Criminal Jury Instructions §§ 3.01A, 3.02, 3.03, & 3.04 (1991 ed.). Moreover, the language even more closely tracks the elements of a conspiracy charge as stated in the case law. *See, e.g.*, *United States v. McGahee*, 257 F.3d 520, 530 (6th Cir. 2001) ("To prove the existence of a conspiracy, the

---

[6]Defendant has not provided a portion of the trial transcript detailing the exact nature of his request or setting out the context. Defendant's recitation of the facts cites page 677 of the transcript (Brf. of Appellant at 34), but that page is not included in the Joint Appendix.

Government must show: (1) that the conspiracy was willfully formed and was existing at or about

the time alleged; (2) that the defendant willfully became a member of the conspiracy; (3) that one

of the conspirators knowingly committed an overt act; and (4) that the overt act was knowingly done

in furtherance of the conspiracy."). Thus, the district court's instruction was a correct statement of

the law and Defendant has not pointed to any authority suggesting otherwise. Nor has Defendant

pointed to any authority supporting his apparent contention the district court should have repeated

the *mens rea* verbiage in the instruction distinguishing conspiracy from the underlying substantive

offense. Accordingly, the district court's instruction more than adequately conveyed the *mens rea*

necessary for the jury to convict Defendant.

Second, Defendant claims the district court's instruction on the elements of an illegal gratuity

offense did not accurately reflect the law. Specifically, Defendant claims the district court's

instruction did not account for the holding in *Sun-Diamond*. Defendant claims he requested the jury

be instructed as follows: "An illegal gratuity may constitute a reward for some future act that the

public official will take (and may have already determined to take) or for a past act that has already

been taken" (Brf. of Appellant at 34-35).[7] When instructing the jury on the elements of an illegal

gratuity, the district court stated:

> The illegal gratuity provision requires that the gratuity be given for or because of an
> official act. In other words, an illegal gratuity may be a reward for some future act
> that the public official will take and may have already determined to take or for a
> past act that he has already taken.

---

[7]Defendant again cites pages of the transcript (657-59) not included in the Joint Appendix.

(JA at 436). Thus, the district court did instruct the jury as Defendant claims to have requested and there was no error.

Finally, Defendant contends the district court should have given an accomplice instruction regarding the testimony of Leo Jennings, a friend of Traficant's whose daughter worked for the Congressman. Where a witness who testifies against a defendant was involved in the same crime with which the defendant is charged, courts generally give an instruction highlighting the credibility problems inhering in such accomplice testimony. *See* U.S. Sixth Circuit Judges Association, Pattern Criminal Jury Instructions § 7.08 (1991 ed.).[8] Defendant claims to have requested such an instruction regarding Jennings' testimony, but the district court declined on the basis there was no evidence in the record Jennings was, in fact, an accomplice (Brf. of Appellant at 35, 54-55).[9] Defendant represents he argued Jennings' grand jury testimony and his testimony at trial "clearly showed" Jennings had acted in furtherance of a conspiracy and was, therefore, an accomplice (*id.*). The Government contends both that Jennings was not an accomplice and any error in failing to give

---

[8]The pattern instruction reads as follows:

   (1) You have heard the testimony of _____. You have also heard that he was involved in the same crime that the defendant is charged with committing. You should consider _____'s testimony with more caution than the testimony of other witnesses.
   (2) Do not convict the defendant based on the unsupported testimony of such a witness, standing alone, unless you believe his testimony beyond a reasonable doubt.

[9]Again, Defendant cites pages of the transcript (673-74, 677) not included in the Joint Appendix.

the instruction was harmless in light of the jury instructions as a whole regarding the weight and credibility of witnesses.

Jennings was not indicted in connection with the dealings forming the basis of Defendant's prosecution and Defendant has not cited to any specific evidence or testimony indicating Jennings knew of or participated in the alleged criminal activity. Defendant's recount of Jennings testimony and that of other witnesses regarding Jennings suggest Jennings may have demanded money from Defendant in return for helping Defendant get access to Traficant, but does not specifically indicate Jennings had any knowledge of illegal gratuities given to Traficant by Defendant or that he actively participated in any such transactions (Brf. of Appellant at 12-15, 21-22, 23-25). It would appear the evidence reasonably suggests Jennings might have been an accomplice to Defendant, but even assuming the district court erred in concluding there was no evidence Jennings was an accomplice, the district court's general instructions regarding the credibility and weight of witness testimony were sufficient to avoid any prejudice to Defendant. The district court instructed the jury to consider whether each witness "had any relationship to the Government or the Defendant or anything to gain or lose from the case that might influence the witness's testimony" (JA at 423), to consider whether each witness "had any bias or prejudice or reason for testifying that might cause the witness to lie or to slant the testimony in favor of one side or the other" (JA at 423), and to consider any prior convictions specifically in judging the weight and credibility of Jennings' testimony (JA at 427). This Court has previously held such instructions adequately inform the jury as to the credibility of witness testimony and a trial court need not explicitly highlight credibility problems inherent in accomplice testimony. *See United States v. Carr*, 5 F.3d 986, 992 (6th Cir. 1993) (failure to give

accomplice instruction was not reversible error where district court cautioned jury to consider any relation to either side or any criminal convictions the witness may have had); *see also United States v. Allgood*, 2002 WL 2026306, at *5 (6th Cir. Aug. 29, 2002) (unpublished opinion) ("While it is the preferred practice to give a cautionary instruction regarding the possible unreliability of accomplice testimony, we have not held that such an instruction is required for a jury to be 'properly cautioned.'"). Thus, while an accomplice instruction might have been appropriate and might well have been desirable, the failure to give one in this case does not amount to reversible error.

**D.      Sufficiency of the Evidence**

Defendant next claims the district court erred in denying his Rule 29 motion for judgment of acquittal because insufficient evidence existed to support a conviction on any of the three counts alleged in the indictment. However, Defendant failed to raise any independent sufficiency of the evidence arguments before the district court. At the close of the Government's proof, Defendant filed a written Rule 29 motion asserting Count Two failed to state an offense and both Counts One and Two were barred by the statute of limitations. Defendant made no arguments whatsoever regarding Count Three. The district court specifically asked whether Defendant wished to add anything to the arguments raised in this written motion and counsel for Defendant responded in the negative (JA at 383-84). Moreover, when discussing procedural matters, the Government specifically stated its understanding Defendant's motion did not relate to Count Three (JA at 384) and counsel for Defendant explicitly stated "given the fact we are only seeking to have Rule 29 granted with respect to Counts 1 and 2, so [sic] we recognize that we have to proceed in any event, even if the motion is granted with respect to Count 3" (JA at 385). At the close of Defendant's case,

counsel for Defendant renewed his previous motion and specifically stated Defendant intended to "rely on the same things we relied upon in our brief" (JA at 417).

Failure to make a Rule 29 motion for judgment of acquittal at the end of the prosecution's case-in-chief and at the close of the evidence constitutes a waiver of objections to the sufficiency of the evidence. *United States v. Chance*, 306 F.3d 356, 368-69 (6th Cir. 2002). Specificity is not required in a Rule 29 motion, thus an abbreviated Rule 29 motion which is general in nature may not amount to a waiver. *See id.* at 369-71. However, where a defendant makes a Rule 29 motion on specific grounds, all grounds not specified in the motion are waived. *United States v. Dandy*, 998 F.2d 1344, 1356-57 (6th Cir. 1993) (holding challenge to sufficiency of evidence waived for purposes of appeal where defendant had filed Rule 29 motion based solely on a statute of limitations argument). Accordingly, Defendant appears to have waived any sufficiency of the evidence argument respecting Count Three and any such argument as to Counts One and Two not relating to the statute of limitations. In his brief, Defendant incorporates by reference his previous arguments respecting Counts One and Two, and only discusses Count Three specifically (Brf. of Appellant at 56). This would seem to imply Defendant's sufficiency of the evidence argument as to the conspiracy and gratuity counts is effectively a restatement of his statute of limitations arguments (*i.e.*, there was insufficient evidence to permit a jury to conclude the alleged offenses occurred within the limitations period). Because the statute of limitations issue was raised below and was articulated in reference to the proof presented at trial (*see* JA at 88-106), Defendant did not waive a challenge to the sufficiency of the evidence to the extent that challenge relates to the statute of limitations issue. However, we have previously addressed Defendant's statute of limitations

arguments in Part II.A, and because Defendant failed to present any other arguments below, he has

waived the right to challenge on appeal the sufficiency of the evidence as it relates to Counts One

and Two generally or in any way to Count Three.

**E.      Ineffective Assistance of Counsel**

Defendant next argues if we conclude he did waive his statute of limitations arguments by

not raising them prior to trial, then he was denied effective assistance of counsel when his attorney

failed to do so.  Because we have already concluded counsel's motion to dismiss on statute of

limitations grounds was, in fact, timely, counsel's failure to file that motion earlier cannot support

an ineffective assistance claim.  In his reply brief, Defendant additionally contends his attorney erred

to the extent he waived any sufficiency of the evidence challenges to the perjury charge in Count

Three.  Generally, we will not review ineffective assistance of counsel claims on direct appeal,

instead deferring such claims to a post-conviction proceeding under 28 U.S.C. § 2255 where a more

adequate record on the issue can be developed.  *See United States v. Valdez*, 362 F.3d 903, 913-14

(6th Cir. 2004).  However, direct review is appropriate where "trial counsel's ineffectiveness is so

apparent from the record that appellate counsel will consider it advisable to raise the issue on direct

appeal."  *Massaro v. United States*, 538 U.S. 500, 508, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714

(2003); *Valdez*, 362 F.3d at 913.  Although counsel's failure to assert a sufficiency of the evidence

challenge with respect to Count Three is clear and obvious from the record, it is impossible to know

why counsel elected not to make such a motion, what strategic considerations might have been

considered, and the extent to which Defendant was consulted in making this decision.  As a result,

this claim is not ripe for review on direct appeal.  Defendant maintains the record is sufficient since

it clearly shows failures on the part of counsel resulting in waivers of arguments and/or rights. However, while the fact of the waivers is readily ascertainable from the record, no explanation for those acts or omissions is evident. Only in the light of such evidence could we fully evaluate the reasonableness of counsel's conduct. Accordingly, we decline to address Defendant's ineffective assistance of counsel claim and defer such claim for consideration by the district court in the context of a motion pursuant to 28 U.S.C. § 2255.

## F.      The Sixth Amendment, *Blakely*, & *Booker*

After receiving leave to do so, Defendant filed a supplemental brief on September 15, 2004, challenging the validity of his sentence based on the Supreme Court's then-recent holding in *Blakely v. Washington*, 542 U.S. ----, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). In *Blakely*, the Supreme Court reversed a sentence imposed under the State of Washington's determinate sentencing scheme after finding the trial judge had enhanced the defendant's kidnaping sentence beyond the statutory maximum based upon his own finding, by a preponderance of the evidence, the defendant had acted with "deliberate cruelty." 124 S. Ct. at 2537-38. In doing so, the Supreme Court reiterated its previous holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000), but clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 124 S. Ct. at 2537 (emphasis in original). By the time the parties filed their supplemental briefs and we held oral argument, this Court, sitting en banc, had

held the ruling in *Blakely* did not compel the conclusion the United States Sentencing Guidelines ("Guidelines") violated the Sixth Amendment's jury trial guarantee. *United States v. Koch*, 383 F.3d 436, 438-43 (6th Cir. 2004) (en banc). However, since oral argument in this case a majority of the Supreme Court has held otherwise, concluding "there is no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue in [*Blakely*]." *United States v. Booker*, --- U.S. ----, 125 S. Ct. 738, 749, 160 L. Ed. 2d 621 (2005) (Stevens, J.). A separate majority of the Court remedied this violation by striking those provisions of the United States Code which made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), and set forth standards of review on appeal, 18 U.S.C. § 3742(e). *Booker*, 125 S. Ct. at 764-66 (Breyer, J.).

Defendant generally alleges the district court sentenced him based on "post-trial conclusions drawn by the judge through new evidence and separate fact-finding" (Supp. Brf. of Appellant at 2-3), but does not point to any specific Guidelines enhancements that violated his Sixth Amendment right to a jury trial. To the extent Defendant contends the district court violated his Sixth Amendment rights simply by *considering* facts not submitted to the jury and found beyond a reasonable doubt, we note nothing in *Apprendi*, *Blakely*, or *Booker* supports such a proposition. In fact, Justice Stevens' majority opinion in *Booker* explicitly rejects this notion. *See* 125 S. Ct. at 750 ("For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."). The Supreme Court has been quite clear that the Sixth Amendment is only implicated when a fact (other than a prior conviction) is necessary to support a sentence *exceeding the maximum* authorized by

the facts established by a plea of guilty or a jury verdict. *See id.* at 755-56. Then, and only then, must the fact be admitted by the defendant or proved to a jury beyond a reasonable doubt.

We note our awareness of a recent opinion by a separate panel of this Court which contains a bit of unfortunate phrasing which could arguably be read to support the position seemingly advanced by Defendant (*i.e.*, that *any* facts considered by a judge in sentencing must be admitted or proved to a jury beyond a reasonable doubt). In *United States v. Davis*, the Court summarized the holdings in *Booker* and *Blakely* as follows: "It is now settled law that the Sixth Amendment forbids a judge from *increasing* a defendant's sentence based on facts not admitted by the defendant or proven to a jury beyond a reasonable doubt." 397 F.3d 340, 350 (6th Cir. 2005) (emphasis added). However, immediately following this sentence, the *Davis* court quoted *Blakely* in providing an alternative formulation of its summary: "In other words, '[w]hen a judge inflicts punishment that the jury's verdict alone does not *allow*, the jury has not found all the facts which the law makes essential to the punishment and the judge exceeds his proper authority.'" *Id.* (emphasis added). Thus, we do not read *Davis* as advancing Defendant's proposition and we note that even if it clearly did so, such an interpretation of the holdings in *Blakely* and *Booker* would be directly contradicted by Justice Steven's partial majority opinion in *Booker* and would completely ignore Justice Breyer's remedial majority opinion.

Although Defendant has not been helpful in identifying the *Blakely/Booker* issues in his case, a review of the transcript of Defendant's sentencing hearing reveals certain enhancements and adjustments were applied under the Guidelines based on judicial fact-finding. Pursuant to USSG § 2C1.2, Defendant's base offense level was seven. The district court then applied an eight-level

increase based upon a finding the gratuity had been given to an elected official, USSG §

2C1.2(b)(2)(B), and an additional two-level increase based upon a finding Defendant had obstructed

or impeded the administration of justice by lying in his testimony before the grand jury, USSG §

3C1.1 & comment. (n.8).[10]  This resulted in a total offense level of 17 and, in light of Defendant's

lack of countable criminal history, produced a Guidelines range of 24 to 30 months.  Defendant did

not object to either enhancement on Sixth Amendment grounds or otherwise.  Defendant objected

only to the inclusion of certain information in his financial profile relating to his ability to pay a

fine[11] and certain particulars of the factual recitation contained in the Presentence Investigation

Report, neither of which affected Defendant's Guidelines range in any way.  Defendant additionally

moved for a four-level downward departure for aberrant behavior pursuant to USSG § 5K2.20,

which the district court denied.  Thus, because Defendant never disputed the application of the

public official and obstruction of justice enhancements, we conclude he has forfeited any Sixth

Amendment challenge to the application of those enhancements.  *See United States v. Olano*, 507

U.S. 725, 731, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993) (holding errors not timely raised

---

[10]The Presentence Report had initially included an additional two-level enhancement pursuant to USSG § 2C1.2(b)(1) based upon a conclusion the offense involved more than one gratuity, but this enhancement was removed based upon the objections of both Defendant and the Government.

[11]To the extent Defendant contends the district court's fact-finding related to whether and in what amount to impose a fine violated the Sixth Amendment, we note the fine Guidelines ranges are a product of the offense of conviction and the applicable offense level.  *See* USSG § 5E1.2. Thus, even assuming *Booker* applies to fines, no constitutional violation would arise from the district court's conclusions as to Defendant's financial circumstances and/or ability to pay a fine because those factors would have no effect upon the fine Guidelines range, but only upon the district court's decision as to whether to impose a fine and in what amount.

before district court are forfeited); *United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996) ("Generally, a failure to object at sentencing forfeits any challenge to the sentence on appeal.").

Despite Defendant's forfeiture of any Sixth Amendment challenge to his sentence, the Court may, at its discretion, still review that sentence for plain error. Fed. R. Crim. P. 52(b); *Olano*, 507 U.S. at 731, 113 S. Ct. at 1776. A "plain error" is (1) an error, (2) that is plain, (3) that affected the defendant's substantial rights, and (4) that, in our discretionary view, "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *See United States v. Cotton*, 535 U.S. 625, 631-32, 122 S. Ct. 1781, 1785, 152 L. Ed. 2d 860 (2002); *see also United States v. Sassanelli*, 118 F.3d 495, 499 (6th Cir. 1997).

Accordingly, the initial inquiry in the plain error analysis is whether, in fact, an error occurred. *See also United States v. Burgin*, 388 F.3d 177, 181 (6th Cir. 2004). With respect to the Sixth Amendment right to a jury trial, Defendant's sentence could have been in error only if that sentence exceeded the maximum allowed based upon the facts found by the jury or admitted by Defendant. *See Booker*, 125 S. Ct. at 750. In this case, two enhancements were applied to increase Defendant's offense level, each of which independently and collectively operated to increase the applicable Guidelines range. The first of these enhancements, for obstruction of justice under USGG § 3C1.1, was premised upon the same conduct which formed the basis of the perjury charge. The commentary to the Guidelines specifically provides the obstruction of justice enhancement applies to defendants who commit, suborn, or attempt to suborn perjury. *See* USSG § 3C1.1, comment. (n.4(b)). Therefore, the facts supporting that two-level enhancement were, in fact, submitted to the jury and explicitly found beyond a reasonable doubt. Accordingly, Defendant's

Sixth Amendment rights were not violated by the application of the obstruction of justice enhancement.

The second enhancement, the eight-level increase for providing a gratuity to an "elected official" pursuant to USSG § 2C1.2(b)(2)(B), presents a similar, but more complicated situation. Because the jury did not render a specific finding as to whether Traficant was an "elected official," it was technically error for the district court to enhance his Guideline range on that basis and the first requirement of the plain error test is satisfied. As to the second requirement (*i.e.*, that the error be "plain"), the word "plain" is "synonymous with 'clear' or, equivalently, 'obvious.'" *Olano*, 507 U.S. at 734, 113 S. Ct. at 1777. An error need not have been clear under the law at the time of trial or sentencing, but must only be clear under the current law at the time of appellate consideration. *Johnson v. United States*, 520 U.S. 461, 467-68, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997). In the wake of the Supreme Court's holding in *Booker*, it is now clear a defendant's sentence cannot be enhanced under a mandatory determinate sentencing regime unless the facts upon which that enhancement is based are either admitted by the defendant or proved to a jury beyond a reasonable doubt. Thus, the district court's error in enhancing Defendant's sentence based on Traficant's status as an "elected official" without a factual finding to that effect from the jury was plain.

The third prong of the plain error analysis (*i.e.*, the error affected the defendant's substantial rights) requires a showing of prejudice, generally meaning the error "must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734, 113 S. Ct. at 1777. In the context of a sentencing error, a defendant must typically establish the error caused him "to receive a more severe sentence." *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004). It is fair to assume that

had the district court correctly determined it could not constitutionally apply the eight-level increase called for by USSG § 2C1.2(b)(2)(B), it would have sentenced Defendant within the resulting Guidelines range (4 to 10 months). Although the district court might well have imposed a similar or identical 24-month sentence under an advisory Guideline regime, it is impossible for us to say so with any certainty. Instead of speculating as to what the district court may or may not have done had it understood the Guidelines as advisory, the more prudent course of action is to remand the case and allow the district court to exercise its new-found discretion in the first instance. This is especially so where, as here, the defendant was sentenced at the bottom of the applicable Guidelines range. *See United States v. Hamm*, 400 F.3d 336, 340 (6th Cir. 2005). In any event, this Court's previous post-*Blakely* rulings appear to compel us to conclude a Sixth Amendment error affects a defendant's substantial rights so long as the defendant "*arguably* received a sentence that was longer than his sentence would have been absent a Sixth Amendment violation." *United States v. Oliver*, 397 F.3d 369, 379-80 (6th Cir. 2005) (emphasis added).

Finally, we must determine whether this is an appropriate case in which to exercise our discretion to correct the error in light of its serious affect on "the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736, 113 S. Ct. at 1779. This Court has already concluded "[a] sentencing error that leads to a violation of the Sixth Amendment by imposing a more severe sentence than is supported by the jury verdict 'would diminish the integrity and public reputation of the judicial system [and] also would diminish the fairness of the criminal sentencing system.'" *Oliver*, 397 F.3d at 380 (quoting *United States v. Bostic*, 371 F.3d 865, 877 (6th Cir. 2004)). As such, we find a remand is compelled in this case based upon this circuit's prior

holdings. However, we do note the Sixth Amendment violation in this case was rather mild in that the evidence upon which the district court based its sentencing determination was overwhelming, undisputed, and something of which the district court could well have taken judicial notice pursuant to Fed. R. Evid. 201.[12] In the past, courts have declined to correct constitutional violations based on the fourth prong of the plain error test under similar circumstances. *See Cotton*, 535 U.S. at 633, 122 S. Ct. at 1786 (refusing to correct *Apprendi* violation under plain error review where evidence of fact improperly found by judge was "overwhelming and essentially uncontroverted"); *Johnson*, 520 U.S. at 469-70, 117 S. Ct. at 1550 (1997) (holding any error in failing to submit and instruct jury on element of materiality in prosecution for making false statements did not "seriously affect the fairness, integrity or public reputation of judicial proceedings," at least where the evidence of materiality was compelling, no evidence to the contrary had been presented, and the defendant had never argued the false statements were not material). In *Oliver*, though, this Court specifically distinguished *Cotton* by explaining the premise of the Supreme Court's holding in that case was the practical reality that *Apprendi* errors were not so easily remedied. 397 F.3d at 380 n. 3. Double

---

[12]Specifically, the indictment alleged Traficant was a "Member of the United States House of Representatives, representing the 17th Congressional District in the State of Ohio" (JA at 1); Traficant was repeatedly referred to throughout both the indictment and trial as "Congressman Traficant"; and Defendant never disputed at trial, nor does he dispute now on appeal, Traficant was, in fact, a public and/or elected official and actually conceded Traficant was a member of Congress in his closing argument. Further, the district court specifically instructed the jury one of the elements it had to find in order to convict Defendant on the gratuity charge was that Traficant was a "public official" at the time of the alleged conduct (*see* JA at 437), but the only evidence presented to the jury regarding Traficant's official status related to his position as an elected member of the United States House of Representatives, thus the jury's verdicts on Counts One and Two could, under the circumstances, be read as an implied finding Defendant's offense involved an "elected official."

jeopardy would have prevented a retrial and, at resentencing, the district court would have been

precluded from considering the facts which had previously operated to enhance the defendant's

sentence in the first place, thus resulting in a windfall for certain defendants in the form of a

sentence less severe that the evidence warranted and thereby seriously threatening the fairness,

integrity, and public reputation of judicial proceedings. *Id.* The *Oliver* court found these concerns

unwarranted in the context of *Booker* violations because at resentencing district courts may still

consider all the evidence and make the same factual findings and exercise their discretion

accordingly. *Id.* We find the same rationale even more apt as a basis for distinguishing *Johnson*

since noticing the plain error in that case (*i.e.*, failure to submit an element of the offense to jury)

would have required the courts to vacate a whole host of otherwise valid convictions in the face of

"overwhelming and uncontroverted" evidence of guilt.

Because we find the relevant facts and circumstances of this case indistinguishable from

those present in *Oliver*,[13] we are compelled to conclude it was plain error for the district court to

---

[13]By way of clarification, we note the holding in *Oliver* is controlling in this case rather than the holding in *United States v. Barnett*, 398 F.3d 516, 525-31 (6th Cir. 2005). Although subsequent holdings of this Court appear to treat these two cases as interchangeable, we note they actually deal with plain error review of two distinct sorts of violations. *Oliver* assesses a *Booker* Sixth Amendment violation for plain error, while *Barnett* applies plain error review to the second, non-constitutional class of potential error created by the remedial majority in *Booker* (*i.e.*, failure to treat the Guidelines as advisory). *See Booker*, 125 S. Ct. at 769 (explicitly finding no Sixth Amendment violation in companion case, *Fanfan*, but nevertheless vacating sentencing and remanding so as to permit either party to "seek resentencing under the system set forth in today's opinions") *United States v. Hughes*, ---- F.3d ----, 2005 WL 628224, at *10-11 (4th Cir. Mar. 16, 2005) (noting *Booker* recognized two potential violations in pre-*Booker* sentences); *see also United States v. Murdock*, 398 F.3d 491, 501-02 (6th Cir. 2005); *United States v. Milan*, 398 F.3d 445, 455 n. 7 (6th Cir. 2005). Because Defendant has raised only a Sixth Amendment argument, our plain error analysis of that claim is governed by *Oliver*.

enhance Defendant's sentence, in violation of his Sixth Amendment rights, based upon its own finding Traficant was an elected official. Accordingly, we will vacate Defendant's sentence and remand for resentencing.

## IV. CONCLUSION

Although the district court erred in denying Defendant's motion to dismiss as untimely, we nevertheless **AFFIRM** Defendant's conviction because neither the conspiracy nor the substantive gratuity counts fell outside the applicable statute of limitations, the district court did not abuse its discretion in admitting Exhibit No. 57 or permitting Kimberly Harris-Bliton to testify, the district court adequately and accurately instructed the jury, Defendant waived any sufficiency of the evidence challenges not relating to the statute of limitations with respect to Counts One and Two, and Defendant's ineffective assistance of counsel claim is not yet ripe for review on direct appeal. However, because the sentence imposed by the district court violated Defendant's Sixth Amendment right to a jury trial, we **VACATE** Defendant's sentence and **REMAND** the case for resentencing in light of this opinion and the Supreme Court's holding in *Booker*.